### HUTCHINS *v.* LIBERTY LIFE INSURANCE CO.

1. LANDLORD AND TENANT—CONSTRUCTION OF LEASE.

    Lease stating that premises were leased for five years "from and after the —— day of July, 1923," and providing that it was "to operate from the day the building now being built by first party is complete and ready for occupancy," is not open to construction that 31st day of July was time limit for completion of building, but simply meant that parties were expecting to have premises ready in July, and, if premises were not ready by July, lessee would not be responsible for rent until such time as they were ready for occupancy.

2. SAME—CANCELLATION OF LEASE NOT JUSTIFIED.

    Failure of lessor to furnish steam heat at time building was finished, as provided for in lease, was not sufficient justification for cancellation of lease, where delay was caused by failure of heating company's steam pipes to reach building, and lessor furnished heat by hot water.

3. SAME—USE OF BUILDING NOT CAUSE FOR CANCELLATION WHERE OCCUPANCY NOT RESTRICTED.

    Where occupancy of first floor of building was in no way restricted in lease, its use as pool room did not justify cancellation of lease of second floor.

4. TRIAL—WITNESSES—INCOMPETENT TESTIMONY.

> Counsel may not sit by and permit incompetent testimony to be introduced without objection, and afterwards, when it is found to be unsatisfactory, have it stricken from record.

5. SAME—MOTION TO STRIKE INCOMPETENT TESTIMONY ADMITTED WITHOUT OBJECTION PROPERLY DENIED.

> Where plaintiff testified to conversations with defendant's president, and was cross-examined relative thereto, motion to strike out said testimony because president was then deceased, which was first intimation court had of president's death, was properly denied.

6. CONTRACTS—WRITTEN CONTRACT MAY BE MODIFIED BY PAROL AGREEMENT.

> While contemporaneous parol agreement is inadmissible to vary terms of written contract, it is competent for parties thereto to add to, take from, and modify terms of written agreement by parol agreement entered into after execution of contract.

7. PLEADING—AMENDMENT—DISCRETION OF COURT.

> In action by lessor for damages for breach of lease, granting motion to amend bill of particulars by extending claim for loss of rental to later date was within discretion of trial court, and, where trial was not had until several months later, no prejudice justifying reversal resulted therefrom.

Error to Wayne; Webster (Arthur), J. Submitted October 11, 1929. (Docket No. 72, Calendar No. 34,413.) Decided December 3, 1929.

Assumpsit by Jesse B. Hutchins against the Liberty Life Insurance Company, a foreign corporation, for breach of lease agreement. From a judgment for plaintiff, defendant brings error. Affirmed.

*Colombo, Colombo & Colombo,* for plaintiff.

*Roxborough, Taliaferro & Jones,* for defendant.

SHARPE, J. On May 5, 1923, the plaintiff executed a written lease to the defendant of the second

floor of a building, then in the course of construction, at an agreed rental of $18,000 for a 5-year term, payable monthly in advance. It was agreed that it should become operative when the building was completed and ready for occupancy. The lessor agreed to equip it for office use, and to "furnish steam heat at his own cost for said entire second floor."

On August 4, 1923, defendant served a "notice of cancellation" of the lease on the plaintiff. The material specific reasons assigned therefor were, the failure to partition and equip the premises as agreed; the failure to provide for the furnishing of steam heat; the permitting the floor below to be used for a pool room.

The premises leased were completed and ready for occupancy on August 15th. The plaintiff was unable to rent them for the sum defendant agreed to pay, and brought this action to recover the damages sustained by him thereby. The case was tried before the court without a jury. He filed findings of fact and conclusions of law, and entered a judgment for plaintiff for $4,470, of which defendant seeks review by writ of error.

The lease was prepared by the defendant's attorney on a form in common use. It stated that the premises were leased for the term of five years "from and after the ...... day of July, 1923," but provided, as before stated, that it was "to operate from the day the building now being built by first party is complete and ready for occupancy." It was insisted that the 31st day of July was the time limit for completion of the building. The trial court said:

"These two provisions of the lease, taken together, mean simply that the parties were expecting

to have the premises ready in July; if they were ready earlier, then the defendant company would be ready to occupy the premises, and would be liable for rent. On the other hand, if the premises were not ready by July, the defendant company would not be responsible for rent until such time as the premises were ready for occupancy. There is no ambiguity about these provisions of the lease, and if there were any such ambiguity as claimed by the defendant's counsel, the counsel himself is responsible for the ambiguity, as the testimony shows that the plaintiff went with the defendant's president to the attorney of the company and prepared the lease which was signed by both parties."

In our opinion this conclusion was justified by the above provisions. The plaintiff undertook to complete the building within a reasonable time, and the testimony shows that he did so.

The trial court found that the partitions and equipment as installed were approved of by the president of the defendant company. He also found that it was contemplated that special heat from the Central Heating Company would be secured, but that at the time the building was completed this company's mains had not reached the building. Plaintiff did install what is spoken of as an "Arcola System," which furnished the heat by hot water instead of by steam. It was carried through the radiators as steam would be, and the lack of installation of the steam heat was, under the circumstances, no sufficient justification for the cancellation of the lease. The occupancy of the first floor was in no way restricted under the terms of the lease. Its use as a pool room in no way violated any of its provisions.

When the plaintiff was examined as a witness, he testified to conversations had with T. L. Gillespie,

defendant's president at that time, in which he expressly consented to the changes made in the partitions and equipment of the premises. He was cross-examined by defendant's counsel relative thereto. At the conclusion of his testimony, defendant's counsel moved that all conversations with Mr. Gillespie be stricken out because he was then deceased. This was the first intimation the court had of Gillespie's death. Error is assigned on the court's denial of the motion. It is without merit.

"Counsel cannot sit by and permit incompetent testimony to be introduced without objection and afterwards, when it is found to be unsatisfactory, have it stricken from the record." *Simmons* v. *National Live Stock Ins. Co.,* 187 Mich. 551, 560 (Ann. Cas. 1917D, 42).

It is urged that this testimony was inadmissible because it varied the terms of the written contract. While a contemporaneous parol agreement is inadmissible to vary the terms of a written contract, it is competent for the parties thereto "to add to, take from and modify the terms of the written agreement" by a parol agreement entered into after the execution of the contract. *Kennedy* v. *Lynch Timber Co.,* 227 Mich. 269, 273.

Plaintiff's declaration was filed on February 18, 1925. In the bill of particulars, filed on the 27th, he claimed for loss of rental to that time. On May 26, 1928, plaintiff moved to amend the bill of particulars by extending the claim for loss of rental to May, 1927—in all, $5,270. An order granting such leave was made on that day. Defendant moved to vacate this order. There was dispute as to whether a written motion had been served. This motion was reserved when made to be presented to the judge trying the case. It was then renewed,

and denied. The granting of the motion to amend was within the discretion of the court, and, as the trial was not had until several months thereafter, no prejudice justifying a reversal resulted to the defendant therefrom.

The other errors assigned have received due consideration. They present no reversible error.

The judgment is affirmed.

NORTH, C. J., and FEAD, BUTZEL, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.