PIERSON v. DAVIDSON.

1. QUIETING TITLE—CLOUD ON TITLE—MINES AND MINERALS—OIL
   AND GAS LEASE.
   Quitclaim deed from holder of outstanding tax deed constituted
   defect or incumbrance against property which lessors should
   remove to comply with provision in oil and gas lease for
   ''clear and merchantable title satisfactory to lessee.''

2. CONTRACTS—CLOUD ON. TITLE—REASONABLE TIME.
   In absence of stipulated time within which to remove cloud from
   title, reasonable time will be presumed, and what is reasonable
   time depends upon facts and circumstances of case.

3. EVIDENCE—WHEN PAROL TESTIMONY ADMISSIBLE.
   Ambiguous and uncertain terms in written contract may be
   explained by parol testimony.

4. CONTRACTS—WRITTEN CONTRACT MAY BE MODIFIED BY SUBSEQUENT
   PAROL AGREEMENT.
   Parties may add to, take from, and modify terms of written
   contract by parol agreement entered into after execution of
   contract.

5. EVIDENCE—TESTIMONY ADMISSIBLE AS TO SUBSEQUENT PAROL
   AGREEMENT.
   Where oil and gas lease providing. for removal of cloud on title
   or return of money paid did not stipulate time for such re-
   moval, testimony as to subsequent oral agreement fixing
   definite time was not inadmissible as attempt to vary terms
   of written contract.

Error to Muskegon; Vanderwerp (John), J.
Submitted October 23, 1930. (Docket No. 139, Cal-
endar No. 35,245.) Decided December 2, 1930.

Assumpsit by William Pierson against J. Edward
Davidson and another for return of money paid on
an oil and gas lease. From a judgment for plain-
tiff, defendant brings error. Affirmed.

On the general rule as to admissibility of parol evidence to vary,
add to or alter a written contract, see annotation in 17 L. R. A. 273,
274.

*John A. McLaughlin (Lou L. Landman,* of counsel), for plaintiff.

*George H. Cross,* for defendants.

Butzel, J. Plaintiff, as lessee, entered into an oil and gas lease with defendants, as lessors, on November 21, 1928, for two parcels of land in Muskegon county, which together contained 124.77 acres. The term of the lease was for one year, with a right of renewal on the part of the lessee, as long as oil or gas was produced in paying quantities. The lessee agreed to pay $1 and other considerations for the lease. It contained provisions that lessors were to receive one-eighth of the oil produced and a like share of the amount received for gas, and also to have gas without charge for household purposes, etc. It further provided that drilling operations must be begun within one year. It also provided that the lessee should build tanks, towers, stations, and other structures as they became necessary.

Another agreement, dated the same day, was entered into either contemporaneous with or immediately subsequent to the lease. In it the lessee agreed to pay $2,480 in cash as the consideration for the lease, the receipt whereof was acknowledged. The agreement further states as follows:

"Whereas, the consideration paid by said William Pierson, trustee, as lessee for said above described lease was the sum of two thousand four hundred eighty dollars ($2,480), and

"Whereas, said lessors are not possessed, at this date, of a clear merchantable title to said property, though they are the grantees in the regular chain of title, and

"Whereas, in the event certain quitclaim deeds are not secured from persons making claim of title

to said above described property, it may be essential to quiet title to said property by action in chancery, or in some other manner to secure to said lessors a merchantable title to said property,

"Now, therefore, in consideration of the mutual promises of the parties above named, and the payment of the amount hereinbefore mentioned, to said lessors, said lessors hereby agree that in the event said quitclaim deeds are not secured from said title claimants, said lessors' title to said property is not successfully quieted by an action in chancery, or said lessors do not secure a clear and merchantable title to said property, satisfactory to said lessee or his assigns, said lessors shall return to said lessee or his assigns, the aforementioned sum of two thousand four hundred eighty dollars ($2,480) paid to said lessors as above stated, and upon such surrender being made of said payment, said lease shall be voided and extinguished, and shall become null and void, and the undersigned lessee or his assigns, shall execute to said lessors a good and sufficient release of said lease."

It was recognized by both parties to the lease that there was a cloud on the title to the property, and there was considerable discussion in regard to it. For that reason the second agreement was entered into. One of the defenses claimed by defendant is that the cloud did not really exist. The two parcels of property had been sold in 1909 for nonpayment of taxes assessed in the year 1906 and two tax deeds were issued to the Farm Land Investment Company. Proceedings were taken by the latter to perfect the title, but in the notice to redeem given to the title owners the two parcels were treated as only one. Instead of there being a statement in the notice of the amount necessary to redeem each parcel, the total amount required to redeem both of them was stated. The Farm Land Investment Com-

pany quitclaimed to a party by the name of Eley, who sold a one-half interest to one Schiessle. One Eva J. Reed, owner of the record title and the grantor of defendants, had begun a suit against Eley to remove the cloud from the title, and obtained a decree by default against him. However, on November 21, 1928, when the lease and agreement were entered into, it was recognized that the suit brought by Mrs. Reed did not clear the title which Eley and Schiessle still claimed. Schiessle, although the owner of a one-half interest in the adverse title to the property, had not been made a party defendant in the Reed suit. The tax deed was recognized as a definite cloud on the title which affected its marketability. Davidson testified that a former owner of the property was unable to negotiate an oil and gas lease on account of the defect in the title.

The record shows that the decree in the *Reed* v. *Eley* case was subsequently set aside and that there was further litigation over the title. Shortly after the lease and agreement between the parties were entered into, defendant J. Edward Davidson went to Chicago where he made a futile effort to secure quitclaims from both Eley and Schiessle. Immediately after November 21, 1928, the date of the agreement between the parties, the oil boom was at its height but as plaintiff claims, he could make no effort to dispose of the lease, because there was not a clear, marketable title to the property. Plaintiff and a third party testified that at a meeting with defendant Davidson during the first week of January, 1929, plaintiff demanded that the title be cleared at once or that the entire transaction be canceled and the money returned; that Davidson agreed then and there that he would return the money unless the title

was cleared by the first of February, 1929. Upon no action being taken to clear the title up to the 12th day of March, 1929, plaintiff sent defendants a notice rescinding and canceling the lease. He enclosed with his notice a release of the lease, together with the sum of $1 to record it. The following day Davidson acknowledged the receipt of the notice, but refused to accept the rescission. He returned the dollar, but not the release.

Thereupon plaintiff brought suit and recovered judgment for the $2,480 together with interest.

Defendants claim that the trial judge, who heard the case without a jury, erred in not finding that the parties made a mutual mistake of fact in believing that there was a defect in the title, and that inasmuch as none really existed, plaintiff had a clear, marketable title from the day the lease was entered into, and therefore had no right to complain. Without discussing the effect of the mutual mistake, even if it were made, the judge was correct in finding that the defendants did not have a clear, marketable title and that an adverse title was not only known to all the parties, but also was being asserted.

Eley and Schiessle claimed title by virtue of the tax deeds and the subsequent proceedings to cut off the redemption. Defendants knew- that the title was not clear, at least to the extent of preventing a lease by the former owners from being consummated. Both defendants and plaintiff knew that there was a threat of further trouble over the title. It was for this reason that the contemporaneous agreement was entered into whereby defendants agreed to either purchase the hostile interests or clear the title in a chancery action and that if they did not *secure a clear and merchantable title satis-factory to plaintiff,* that they would return the

money. The very object of the agreement was to free the title from the tax deeds. The very fact, as the record discloses, that the title was not cleared until September, 1929, or ten months after the agreement was entered into, and then only on the condition that a small sum of money be paid to Eley, shows that the title was not clear. According to the findings of the court, no disposition has been as yet made of the claim of Schiessle. The agreement provided that the title should not only be merchantable, but also clear and satisfactory to plaintiff. It is evident from the record that none of the parties considered it such. There was undoubtedly an outstanding defect or incumbrance against the property, for the record showed *prima facie* the rights of others to it. *City of Detroit* v. *Martin,* 34 Mich. 170 (22 Am. Rep. 512); *Whitney* v. *City of Port Huron,* 88 Mich. 268 (26 Am. St. Rep. 291). In *Emig* v. *Frank P. Miller Corp.,* 238 Mich. 695, the court said as follows:

"This is a situation that would make the average contemplated purchaser or mortgagee shy and refuse to purchase or become mortgagee unless the matter was cleared up. This is exactly what did happen, as is shown by the proofs. One learned in the law might not consider the situation serious, but the laity would hesitate to act in such circumstances, and thereby the recorded quitclaim deed would stand in the way and prevent a free exercise of plaintiffs' ownership of the lots."

Defendants further claim that there was no time stipulated within which to remove the cloud. It is a general rule of law that where no time is stipulated, a reasonable time will be presumed. Reasonable time depends upon the facts and circumstances of each case. *Greenwood* v. *Davis,* 106 Mich. 230;

*Reinforced Concrete Pipe Co.* v. *Boyes,* 180 Mich. 609; *Brow* v. *Gibraltar Land Co.,* 249 Mich. 662. However, it does not even become necessary for us to determine what was the reasonable time, for the parties themselves stipulated that the title should be cleared by February 1, 1929, or the money returned to plaintiff. This was one of the findings of fact by the judge who heard the testimony. Defendants, however, claim that this testimony in regard to the verbal agreement was inadmissible, inasmuch as it sought to vary the terms of a written contract, or else showed that a new contract was entered into without any consideration. There is no merit to this contention. Ambiguous and uncertain terms in a contract may always be explained by parol testimony. It is always competent for parties to add to, take from, and modify the terms of an agreement by parol agreement entered into after the execution of the contract. *Kennedy* v. *Lynch Timber Co.,* 227 Mich. 269; *Wingilia* v. *Ashman,* 241 Mich. 534; *Hutchins* v. *Liberty Life Insurance Co.,* 248 Mich. 593.

The judgment of the lower court is affirmed, with costs to plaintiff.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.