MARKMAN, J.
I agree with Justice CORRIGAN’S opinion, which would affirm the Court of Appeals on the partition issue. I agree that title vested in the surviving joint tenant on the decedent’s death because the mere filing of a partition action does not sever a joint tenancy when no order granting partition was entered before the death. However, I would reverse the judgment of the Court of Appeals on the statute of limitations issue. I disagree that the statute of limitations does not bar recovery on any of the loans. Instead, I would hold that the statute of limitations bars recovery on all but the last loan made because it is the only one to fall within the six-year limitations period. MCL 600.5807(8).
Plaintiff filed this action, claiming that she gave defendant’s decedent a series of checks as loans totaling more than $50,000, for which the parties did not have written contracts. Rather, defendant’s decedent allegedly asked to borrow money at various times over a period of years. Defendant moved for summary disposition, arguing that the statute of limitations barred the claim, and the trial court denied the motion. A jury found that all the checks were loans, all but one of which had not been repaid. The Court of Appeals upheld the denial of summary disposition on the statute of limitations issue, Jackson v Green Estate, unpublished opinion per curiam, issued April 1, 2008 (Docket No. 269244),[1] and this Court granted leave to appeal, 482 Mich 981 (2008).
I would hold that the period of limitations expired for all but the last loan. The Court of Appeals correctly observed that if no time is set for the repayment of *222 borrowed money, the loan is impliedly payable on demand. See Colburn v First Baptist Church & Society of Monroe, 60 Mich 198; 26 NW 878 (1886).[2] But when does the period of limitations begin to run on a loan that is payable on demand? Does it begin running when the loan is made, when payment is demanded, or at some other time? This Court answered that question in Palmer v Palmer, 36 Mich 487, 491 (1877):
It is now well settled that a note payable on demand is payable at once and without demand, so that the statute runs from its delivery. And this rule has been applied where from the form of the contract it is manifest that immediate payment was not expected.
Palmer proceeded to explain the rationale for this rule:
For if the debt did not become payable until fixed by demand, and the demand was optional with the creditor, no tender could be made which would bind him, and he could keep the debt alive in spite of the debtor, for an indefinite period. If there was any infirmity in the consideration, or *223 any defect in the binding character of the obligation, he might retain it until all testimony was lost, and defeat the defense. This is the mischief which the statutes of limitation were intended to remedy ....
We cannot but think this to be sound doctrine; whatever may have been the ancient prejudice against statutes of limitation they are now regarded as just and entitled to be fairly construed. If a creditor has the means at all times of making his cause of action perfect, it would be unjust and oppressive to hold that he could postpone indefinitely the time for enforcing his claim by failing to present it. He is really and in fact able at any time to bring an action, when he can by his own act fix the time of payment. It is no stretch of language to hold that a cause of action accrues for the purpose of setting the statute in motion as .soon as the creditor by his own act, and in spite of the debtor, can make the demand payable. It may be otherwise, possibly, where delay is contemplated by the express terms of the contract, and where a speedy demand would manifestly violate its intent.[3] But where no delay is contemplated the *225 rule is just and reasonable; and the presentment should be reasonably prompt, or the creditor should be subjected to the operation of the statute. [Id. at 491, 494.]
Palmer was followed in later cases. See, e.g., Beardsley v Webber, 104 Mich 88, 89; 62 NW 173 (1895) (“No demand is necessary on a demand note . . . .”); Citizens’ Savings Bank v Vaughan, 115 Mich 156, 159; 73 NW 143 (1897) (“[T]he universal rule is that [a demand] note is due at once, and that no demand is necessary before bringing suit.”); Peninsular Savings Bank v Hosie, 112 Mich 351, 355; 70 NW 890 (1897) (“ ‘If the instrument be payable on demand, the statute begins to run immediately.’ ”) (citation omitted); Taylor v Rugenstein, 245 Mich 152, 154; 222 NW 107 (1928) (“The general rule is that suit may be brought on a demand note immediately after delivery, and therefore the statute of limitations begins to run from the day of delivery.”).
In light of these authorities, the Court of Appeals erred, in my judgment, when it stated that “the statute of limitations would not begin to run on such a claim until a demand for repayment was made----” Jackson, unpub op at 5 [4] Palmer and its progeny established that the period of limitations begins to run *226 from the day that a demand note is delivered, unless a contrary intention is apparent. While those cases addressed written demand notes, there is no apparent reason why Palmer should not equally apply to an oral contract.[5] In fact, the policies underlying statutes of limitations are implicated even more strongly in the *227 latter circumstances because it is more difficult to produce evidence to defend against a stale claim of an oral agreement.[6]
Thus, I would reverse the Court of Appeals on this issue and hold that all the alleged loans other than the last one fall outside the period of limitations. That is, because plaintiff waited more than six years to demand payment on all the loans but one, all her claims but one are barred by the statute of limitations.

 Decedent died while the appeal was pending. His estate was substituted as the defendant.

 Justice Young’s “reasonable time” approach is inconsistent with Colburn, 60 Mich at 200, because Colburn held that a loan made with no fixed time for repayment is payable on demand. That is, such a loan is “impliedly payable on demand,” id., not after some "reasonable time.” Moreover, his reliance on Pierson v Davidson, 252 Mich 319, 324; 233 NW 329 (1930), for the proposition that “where no time is stipulated, a reasonable time will be presumed,” is misplaced because this language was clearly dictum, since Pierson immediately thereafter held, “However, it does not even become necessary for us to determine what was the reasonable time, for the parties themselves stipulated that the title should be cleared by February 1,1929 ....” I believe his reliance on Duke v Miller, 355 Mich 540; 94 NW2d 819 (1959), is also misplaced because, unlike the instant case, Duke did not involve when a period of limitations begins to run; instead, it only addressed whether a memorandum that does not specify the time for payment is sufficient under the statute of frauds as evidence of an agreement to sell land. Incidentally, I am also perplexed by Justice Cavanagh’s position because, although he criticizes Justice Young at length for adopting the “reasonable time” approach, post at 237-239, he then appears to adopt it himself, post at 244-245.

 In Smith v Smith Estate, 91 Mich 7, 9; 51 NW 694 (1892), the decision on which Justice CAVANAGH primarily relies to conclude that the period of limitations did not begin to ran until six years after the loans were made, delay was contemplated by the express terms of the contract, i.e., “when Armstrong came to him to request a loan of the logs to Eugene, Abram said to him, in substance, that he might have them, as he had more than he needed at that time, but they must he returned to him when he demanded them”; “it was contemplated between the parties that logs of like kind and quality should he returned as soon as Eugene’s logs.. . came down the stream and into the St. Clair river.” By contrast, the express terms of the instant contracts no more contemplated delay than did the express terms of the contract in Palmer. Given that Justice Cavanagh concedes that the only “express term” of the instant contracts is that “defendant asked to borrow money from plaintiff,” post at 240,1 am not quite sure why he disagrees -with my conclusion that the express terms of the contracts did not contemplate delay any more than the Palmer contract. He appears to suggest that the fact that “there were no ‘express terms’ of the contracts that contemplated immediate payment,” *224 post at 244, is the equivalent of meaning that the express terms contemplated delay. However, the express terms in these contracts simply did not address whether delay was or was not contemplated, because, as Justice Cavanagh earlier explained, the only express term of the contracts was that defendant “borrow[ed]” money from plaintiff. Post at 240. In addition, it is noteworthy that, although Justice Cavanagh criticizes Justice Young for relegating to a jury the determination whether claims are barred by the statute of limitations, post at 237-239, he nevertheless relies on the jury’s alleged conclusion that the parties did “contemplate delay in repayment,” post at 240 n 11, to conclude that the period of limitations did not begin to run immediately. Would Justice Cavanagh leave the statute of limitations issue up to the jury or not? Contrary to Justice Cavanagh’s contention, post at 240 n 11, the mere fact that the jury concluded that “repayment is now owed” does not necessarily mean that the jury either concluded that repayment was not owed as soon as the money was borrowed or that the parties did “contemplate delay in repayment.” Further, Smith limited its holding to cases in which “a demand is necessary,” 91 Mich at 12, and, as discussed earlier, a demand was not necessary in this case, Palmer, 36 Mich at 491 (stating that “a note payable on demand is payable at once and without demand”) (emphasis added). For these reasons, I believe that Palmer, rather than Smith, is controlling in this case.
Moreover, extending Smith to the instant circumstances would anomalously provide those parties who never make a timely demand with a longer period in which to bring an action than those parties who do make a timely demand. Justice Cavanagh claims that we “simply disagree on when accrual should occur.” Post at 242. Although this is correct, the accrual date makes all the difference. Under Justice Cavanagh’s position, if a demand is made immediately after the loan is made, the claim will accrue immediately and the period of limitations will expire in 6 years from the date of the loan; however, if no demand is ever made, the claim will not accrue until 6 years have passed, and the period of limitations will not expire until 12 years after the loan was made. How can this be characterized as anything but an anomalous result? Justice Cavanagh asserts that he is “perplexed” about why I believe this to be an anomalous result. Post at 242 n 13. I believe this to be so because, under Justice Cavanagh’s approach, the plaintiff has complete control over when his action accrues, and thus when the period of limitations begins to run. What concerns me is not the fact alone that the plaintiff would get more time; rather, it is that the plaintiff would get to choose exactly how much time he would have to bring an action. If the plaintiff wanted to file his action immediately, he could do so; if, on the other hand, he wanted to wait 10 or 11 or 12 years, he could do that as well. Contrary to Justice *225 Cavanagh’s contention, post at 242 n 13, Colburn provides the plaintiff with such unfettered authority only if one ignores Palmer, which held that because no demand is necessary, the period of limitations begins to run immediately. Thus, my “consternation” is not caused by Colburn, but by Justice Cavanagh’s disregard of Palmer. Post at 242 n 13. Finally, contrary to Justice Cavanagh’s contention, my “insistence. .. that accrual must occur at the loan’s inception” is not “contrary to the general rale,” post at 242; rather, it is, in fact, in accord with the general rule both in Michigan, see Palmer, and in a vast majority of other jurisdictions, see n 5 of this opinion.

 Likewise, Justice Young errs by reaching the same conclusion because Palmer specifically rejected this. In Palmer, this Court explained:
*226 The [lower] court found that the suit was not barred. This conclusion was based on the theory that until demand [was] made no action accrued; and that as the time limited by the statute runs from the time when action accrues, it did not begin to run until thirty days after [the demand was made].” [Palmer, 36 Mich at 490.]
Palmer, however, rejected this analysis, reversed the lower court’s judgment, and held that the period of limitations began running immediately upon delivery. In addition, Justice Young’s conclusion that there is no breach, and thus that the action does not accrue until a demand has been made, is inconsistent with the undisputed fact that, once money is borrowed, an action seeking repayment can be brought at any time. Because an action cannot be brought until it has accrued, it necessarily follows that once money is borrowed, the action accrues immediately and, thus, the period of limitations begins to run immediately. For this reason, I disagree with Justice Young that the Palmer rule is “illogical” and “inconsistent with contracting parties’ intent.” Ante at 218-219.

 Indeed, the majority of other jurisdictions have held that the period of limitations begins to run from the date the borrowed money is given to the borrower under an unwritten or verbal agreement to repay See Anno: When statute of limitations begins to run against action based on unwritten promise to pay money where there is no condition or definite time for repayment, 14 ALR4th 1385, 1388 (“Reasoning that oral loans without any due date or provision for repayment occupy the same legal status as obligations due on demand, the court said that the statute of limitations period begins to run against suits based on demand obligations, and consequently against suits based on loans without repayment provisions, from the time the obligations or loan agreements are entered into by the parties.”), citing Gentry v Gentry, 59 NM 395; 285 P2d 503 (1955). Justice CAVANAGH would reach another anomalous result in which, although the period of limitations would start running under Palmer immediately with regard to written contracts, the period of limitations would not start running with regard to oral contracts until either a demand was made or six years had elapsed. That is, according to Justice Cavanagh, the period of limitations should be longer for oral contracts *227 than for written contracts, despite the fact that it is often considerably more difficult to establish the terms of an oral contract, as demonstrated by this very case.

 Unlike Justice Young, I would not leave it to a jury to determine when a “reasonable” time to make a demand has elapsed. I cannot think of a procedure more likely to undermine one of the principal purposes of a statute of limitations, namely, to establish at least some modicum of certainty with respect to the period within which a lawsuit can be brought in response to allegedly wrongful conduct. Not only is Justice Young’s rule inconsistent with Palmer, 36 Mich at 491, and Colburn, 60 Mich at 200, as discussed earlier, I do not believe that he has demonstrated why stare decisis should not be followed with regard to these decisions, which have adequately served this state for well over a centuiy. See Robinson v Detroit, 462 Mich 439, 466; 613 NW2d 307 (2000) (observing that before reversing a precedent, “the Court must ask [inter alia] whether the previous decision has become so embedded, so accepted, so fundamental, to everyone’s expectations that to change it would produce ... practical real-world dislocations”). In particular, with regard to this Court’s development of the common law, at least some compelling argument must be offered in support of altering the law, and I have heard no such argument raised here by either party.