CAVANAGH, J.
I disagree with the separate opinions of Justices Corrigan, Young, and Markman. On the partition issue, I would allow the merits of defendant’s partition action to be heard because it comes within the purview of the survival statute. See MCL 600.2921. Regarding the statute of limitations issue, I find Smith v Smith Estate, 91 Mich 7; 51 NW 694 (1892), to be controlling, and I would apply its rule here to hold that *228 all the claims were timely made except those that related to the first two loans. Accordingly, I would reverse the judgment of the Court of Appeals on both issues.
I. PARTITION
In Michigan, there are two forms of joint tenancies. Albro v Allen, 434 Mich 271, 274; 454 NW2d 85 (1990). The first is the standard form in which, upon the death of a joint tenant, the entire estate transfers to the surviving joint tenant or tenants. Id. at 274-275. In the standard joint tenancy, one joint tenant can unilaterally destroy the right of survivorship by severing the joint tenancy. Id. One way to sever the joint tenancy is a partition action. Smith v Smith, 290 Mich 143, 155; 287 NW 411 (1939), quoting Midgley v Walker, 101 Mich 583, 584; 60 NW 296 (1894).
The second form of joint tenancy is one that has “express words of survivorship in the granting instrument in addition to those creating a joint tenancy, such as . . . ‘with full rights of survivorship.’ ” Albro, 434 Mich at 275 (citation omitted). In contrast to the standard joint tenancy, it is well settled in Michigan that the survivorship quality of this type of joint tenancy cannot be unilaterally severed by the act of one cotenant. Id. at 275-276. Thus, the survivorship right of this type of joint tenancy is indestructible and is not affected by a partition action.
The deeds in this case created both forms of joint tenancies. The September 1991 deed created the second, indestructible variety; thus, the defendant’s partition action had no effect on the joint tenancy’s survivorship quality, and the land automatically transferred to plaintiff upon defendant’s death. The May 1991 deed, however, created a standard joint tenancy, which there *229 fore could be affected by a partition action. Thus, the issue in this case is what effect defendant’s death had on his pending partition action regarding the property covered by the May 1991 deed.
This Court’s pronouncements regarding the absolute right of a cotenant to partition, coupled with the plain language of Michigan’s survival statute, MCL 600.2921, demand that defendant’s death not abate his partition action. Partition actions are governed by two sections of the Revised Judicature Act: MCL 600.3304 and MCL 600.3308. MCL 600.3304 states that “[a]ll persons holding lands as joint tenants. . . may have those lands partitioned.” In addition, MCL 600.3308 states that “[a]ny person who has an estate in possession in the lands of which partition is sought may maintain a claim for partition of those lands .. . .” This Court has made strong statements about facially valid partition actions and the right of a joint tenant to compel partition in a standard joint tenancy: “The right of a cotenant to partition is absolute, not a mere matter of grace, within the discretion of the court, regardless of the motives of the parties entitled to partition.” Henkel v Henkel, 282 Mich 473, 482; 276 NW 522 (1937) (quotation marks and citations omitted; emphasis added). Moreover, partition is mandatory “unless there is some paramount or controlling equity which warrants the court in refusing to act....” Id.
When interpreting a statute, the primary goal is to give effect to the intent of the Legislature. Frankenmuth Mut Ins Co v Marlette Homes, Inc, 456 Mich 511, 515; 573 NW2d 611 (1998). When the language of the “statute is clear and unambiguous, judicial construction is precluded.” Id. (quotation marks and citation omitted).
Michigan’s survival statute provides:
*230 All actions and claims survive death. Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to the next section. If an action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for additional damages resulting from death. [MCL 600.2921 (emphasis added).]
The plain language of the statute is clear and unambiguous and therefore in need of no interpretation — all actions survive a claimant’s death.
Not only is this interpretation consistent with the plain language of the statute, it is also consistent with the legislative history of the statute. This Court examined the lengthy history of the survival statute in Hardy v Maxheimer, 429 Mich 422; 416 NW2d 299 (1987). “ ‘Early in its histoxy Michigan adopted a rather liberal “survival act” to preserve causes of action which, under common law, were terminated by the death either of the person injured or the tortfeasor.’ ” Id. at 436, quoting Hawkins v Regional Med Laboratories, PC, 415 Mich 420, 428-429; 329 NW2d 729 (1982). The statute was later amended to “expand[] the number of causes of action which survived a claimant’s death,” but “in [the Revised Judicature Act], the Legislature abandoned its restrictive ‘laundry list’ approach to the survival act” and amended it to its present form. Hardy, 429 Mich at 437. This Court then emphasized that the bill analysis accompanying the act clearly showed the Legislature’s intent. Id. The relevant portions quoted were as follows:
“This section drastically changes the present law .... At common law, personal rights of action died with the person. This seemed manifestly unfair in certain cases, so Survival Acts were written to allow certain actions to survive. There is no good reason for allowing some actions to survive, and not others, apart from cultural inertia....
*231 “This section is a logical advance in the legislation in this area. That it has not been made earlier may be due to the unfortunate approach of the statutes in listing those actions which do survive, and thus overlooking those which the statute failed to cover. This section has the added advantage of simplicity in application.” [Id. at 437-438.]
While the survival statute is commonly applied to tort actions, the history of and comments on the statute clearly illustrate the Legislature’s intent to make all claims immune from attacks based on a claimant’s death. The statute clearly abrogates the harsh common-law rule that pending actions die with the death of a party.[1] In fact, after reviewing the history of and comments on the statute in Hardy, this Court described the language of the statute as “sweeping and unambiguous” and declared that the statute is “universally applicable to all actions and claims which arise under the Revised Judicature Act.” Id. at 438. A partition action is one of the actions included in the Revised Judicature Act. Given the survival statute’s unqualified language and this Court’s prior examination of the statute, I would hold that because defendant was alive when he filed his action for partition, the action survives and should be heard on its merits. To hold otherwise would frustrate the clear intent of the Legislature and would be inconsistent with this Court’s prior declarations regarding the applicability of the survival statute to actions arising under the Revised Judicature Act.[2]
*232 Moreover, partition actions are equitable in nature. MCL 600.3301. Thus, this Court has broader authority to inject fairness and render a fair judgment. Brown v Fletcher’s Estate, 146 Mich 401, 417-420; 109 NW 686 (1906) (acknowledging a softening of the common-law rule of abatement for a deceased party’s claim when the claim is based in equity). In this case, notions of equity strongly support allowing the merits of defendant’s partition action to be heard. After defendant filed an action for partition, his case sat idle for more than a year while plaintiff appealed the trial court’s earlier ruling regarding the validity of the deeds. Eventually, the Court of Appeals summarily and correctly affirmed the validity of the deeds. Nonetheless, the Court of Appeals, without citing any supporting authority, held that because defendant had died before an order of partition was entered, his claim was moot. Given the validity of the May 1991 deed and defendant’s absolute right to partition, I would allow defendant’s action to continue. But for plaintiffs lengthy, unmeritorious, and collateral appeal and defendant’s untimely death, the merits of defendant’s claim would certainly have been heard. To hold otherwise would not only ignore notions of equity and this Court’s pronouncements that the right to partition is absolute, but would also frustrate our Legislature’s intent to make claims that arise under the Revised Judicature Act immune from attacks based on a claimant’s subsequent death. See Hardy, 429 Mich at 436-438.[3]
*233 II. STATUTE OF LIMITATIONS
“[T]he period of limitations runs from the time the claim accrues,” which occurs “at the time the wrong upon which the claim is based was done . ..MCL 600.5827.[4] In contract claims,, the time of the wrong is the moment that the contract is breached. AFSCME v Highland Park Bd of Ed, 457 Mich 74, 90; 577 NW2d 79 (1998) (opinion by CAVANAGH, J.). This case involves oral loans with no terms expressing a time for repayment. Repayment of this type of loan is due upon a demand. Colburn v First Baptist Church & Society of Monroe, 60 Mich 198, 200; 26 NW 878 (1886). Hence, a claim for nonpayment of such a loan accrues when a demand for repayment is made. However, this Court has held that accrual cannot be left to the whim of the lender because, if it were, the lender could wait in near perpetuity until demanding payment, which would contravene the venerable aims of statutes of limitations. Indeed, in Smith Estate, 91 Mich at 11, this Court held that if a demand is necessary for accrual of the claim, it should be made within a reasonable time, and if the demand is not made within a reasonable time, then accrual occurs and the period of limitations begins to run at the end of the period that would have been a reasonable time in which to make the demand.
*234 In Smith Estate, the plaintiff sued to enforce a claim for the value of logs that were loaned to the defendant after the defendant failed to either return the logs or pay the plaintiff their value. Id. at 8-11. The Court, after reviewing testimony regarding the terms of the oral contract, held that the transaction was a sale and the claim was barred by the statute of limitations because the plaintiff failed to bring suit within six years after a reasonable time to demand payment had passed. Id. at 11-12.[5] The Court held that if a plaintiff failed to make a demand for repayment within a reasonable time, we should presume that a demand was made at the expiration of the reasonable time to begin the running of the period of limitations. The Court defined a reasonable time as equivalent to the six-year period of limitations for an ordinary money claim, thus giving a party six years to make a demand and six years to bring suit after having made the demand. Id. The Court adopted this rule from Keithler v Foster, 22 Ohio St 27 (1871). Smith Estate, 91 Mich at 12.[6] Moreover, the Court reasoned that its rule was driven by the purpose of the statute of limitations: “The object of the statute of limitations is a beneficial one; and it is a salutary protection against fraudulent and stale claims, which without it might purposely be postponed for enforcement until the lapse of time had destroyed the proofs of their falsity.” Id. at 11.
*235 In essence, Smith Estate gives a plaintiff 12 years to bring a contract action on an oral loan that specified no time for repayment. The plaintiff has a reasonable time in which to make a demand, which Smith Estate held is six years as a matter of law. If no demand is made within six years, then the court will “presume” that a demand was made for the purposes of the statute of limitations.[7] Then, under the statute of limitations, the plaintiff has six years from the date of this presumed demand to bring a claim.[8]
In this case, consistently with the rule of Smith Estate, I would hold that the July 1991 and September 1992 oral loans between plaintiff and defendant are barred by the statute of limitations. Because plaintiff failed to make a demand for repayment within a reasonable time, I would presume that a demand was made at the expiration of the reasonable time and thus measure the period of limitations from the date of the presumed demand. There were 11 oral loans, which were made between July 1991 and February 1999. Plaintiff made no demand for payment until she filed her complaint covering all these loans in November 2004. Thus, for any loan made more than 12 years *236 earlier, i.e., before November 1992, plaintiffs claim would be untimely.[9] Plaintiffs claims included two such loans, which originated in July 1991 and September 1992. Thus, her claims on those loans were barred by the statute of limitations in July 2003 and September 2004. In contrast, the claims relating to the remaining nine loans, which were made between March 1994 and February 1999, were timely under the November 2004 complaint.[10]
*237 As noted, I agree with Justice Young’s statement that “the absence of a specific time for repayment does not allow a creditor to withhold this demand for an indefinite period of time.” Ante at 217. However, I do not agree with the construct that Justice YOUNG develops to address this concern. He institutes a rule that allows the jury to decide when a presumed demand should occur, which is set at what the jury determines to be a reasonable time. Justice YOUNG bases this construct on the idea “that the parties intended plaintiffs demand for repayment to occur within a reasonable amount of time.” Ante at 217. I decline to accept this construct for several reasons.
First, there is little precedential support for this construct. Justice YOUNG relies on Pierson v Davidson, 252 Mich 319; 233 NW 329 (1930), to support his construct. But Pierson is both factually and legally distinguishable from the present case. Factually, Pier-son involved a written oil and gas lease agreement. Id. at 320-321. Thus, unlike the present case, Pierson did not deal with an oral loan. And legally, Pierson dealt with the contractual requirement that the lessor clear a cloud on the title to the real property or the lease would “ 'be voided and extinguished, and shall become null and void ....’” Id. at 321. Pierson did not deal with the question of when payment on an oral promise to repay, which hinges on a demand, was due. In contrast, Smith Estate dealt with this Court’s unanimous statement that, in the case of an oral loan with no time set for repayment, a demand is to be presumed six years from the loan’s inception and accrual occurs at that time. In light of Justice YOUNG’s refusal to rely on Smith Estate *238 (a case that is factually and legally exactly on point), I question his reliance on Pierson because that case seems much less applicable here than Smith Estate. It is unclear why Justice YOUNG finds Smith Estate too dissimilar for application here, while concomitantly finding the much more distinguishable Pierson case to be controlling.
Second, I believe that Justice Young’s construct overly diminishes the statute of limitations. Justice YOUNG puts no restriction on how long a reasonable amount of time may extend. Instead, he would allow a reasonable amount of time to go on indefinitely. I think that this eviscerates the statute of limitations and undermines its purposes in this context, as Smith Estate clearly discussed. See Smith Estate, 91 Mich at 11-12. In contrast to Justice Young’s construct, the Smith Estate construct presents a better balance between the rationales supporting the statute of limitations and the legal precepts pertaining to oral contracts. The Smith Estate construct gives definite answers. Under no circumstances may a plaintiff carry out his claim more than 12 years past the time of the oral loan that has no time set for repayment. As noted, this Court lauded the stability and predictability of this construct in Smith Estate because it reduces fraud and the litigation of stale issues. See id. at 11. Justice Young’s construct does not protect against these problems. The Smith Estate construct also honors the concepts that an oral loan is not due until a demand is made and a claim does not accrue until a demand (presumed or actual) occurs. In contrast, under Justice Young’s construct, a plaintiff need only convince a jury that it was reasonable to delay the demand for payment for any number of years in order to bring claims on loans that originated, conceivably, decades in the past.
*239 Both Justice YOUNG’s construct and the Smith Estate construct presume a demand at some point after the oral loan was made. I find the Smith Estate construct’s method of determining when that presumption occurs to be more closely tied to the purposes of the limitations period, while honoring basic contract tenets. Further, Smith Estate provides the most applicable standard for the facts and issues in the present case; therefore, I would apply it in place of Justice YOUNG’s construct. Under the Smith Estate construct, I would hold that only the claims on the first two loans (those arising before 1992) were time-barred.
I note that Justice MARKMAN questions my reliance on Smith Estate. He argues that the contract in Smith Estate contemplated a delay in repayment, whereas the “express terms of the instant contracts” did not contemplate any such delay. Ante at 223 n 3. I respectfully disagree. I question whether Justice MARKMAN can opine on the “express terms” of the instant contract with any specificity, given that the parties litigated the very existence of any oral contract. Indeed, the trial court discussed this case’s facts as follows when reviewing a motion for summary disposition:
The loans — or the distribution of money... is a close question, but there is some testimony that [Green] made a request to borrow, which I think impliedly includes a promise to repay, and while [Jackson] said [in her deposition] there was no specific agreement or promise to repay ... , which certainly hurts her case, she did say that there was a request to borrow and, therefore, that’s what caused the advance of monies.
So I think that there is a factual question as to whether these advances were gifts, whether they were, in fact, loans, as [Jackson] now claims, or whether they were, in fact, compensation as [Green] claims at least part of the advances were for.
*240 Thus, while the jury eventually decided that there were enforceable oral contracts, I do not believe that the facts of this case support Justice MARKMAN’s assertion that the contracts’ express terms did not contemplate a delay in repayment.[11] The record only supports the fact that defendant asked to borrow money from plaintiff and that plaintiff responded by writing numerous checks. Moreover, the parties’ actions actually indicated that they did contemplate a delay in repayment because plaintiff continually made numerous loans to defendant over a term of years. It strains reason to conclude, as Justice MARKMAN does, that the parties expected payment immediately yet, despite never receiving any such immediate payment, plaintiff continued to make additional loans over several years.[12]
*241 Justice MARKMAN also argues that Smith Estate limited its holding to cases in which a demand is necessary. Assuming that he is correct, I do not see how this precludes the application of Smith Estate in this case. As Justice MARKMAN notes, if “no time is set for the repayment of borrowed money, the loan is impliedly payable on demand.” Ante at 221-222, citing Colburn. It is uncontested that this case involves loans that set no time for repayment of the borrowed money. Hence, I think Smith Estate applies.
Justice MARKMAN also suggests that applying Smith Estate here “anomalously provide[s] those parties who never make a timely demand with a longer period in which to bring an action than those parties who do make a timely demand.” Ante at 224 n 3.1 disagree that following Smith Estate's general rule that a demand is necessary to trigger accrual causes anomalous results. Under Smith Estate, the period in which to bring a *242 claim is always six years — after accrual of the claim. Justice MARKMAN and I simply disagree on when accrual should occur. His insistence (contrary to the general rule) that accrual must occur at the loan’s inception is what causes his perception of anomalous results. Under Smith Estate, every claimant has six years to bring his claim after it accrues, which is triggered by a demand or the presumed demand, whichever happens first. While I accept that Justice MARKMAN disagrees with this legal construct, I disagree with his assertion that it causes anomalous results, especially in light of his counterintuitive position that parties make oral loans to each other and expect payment immediately.[13]
*243 Finally, Justice MARKMAN adopts his immediate-accrual construct by incorporating the holding from Palmer v Palmer, 36 Mich 487 (1877). While conceding that Palmer and its progeny “addressed written demand notes,” Justice MARKMAN concludes that “there is no apparent reason why Palmer should not equally apply to an oral contract.” Ante at 226. I respectfully note several reasons why Palmer should not apply to oral contracts like those in this case.
Palmer, a case concerning a promissory note, held that “a note payable on demand is payable at once and without demand, so that the statute [of limitations] runs from its delivery.” Palmer, 36 Mich at 491 (emphasis added). This Court has defined a promissory note as “a written unconditional promise by one person to pay to another person therein named... a fixed sum of money . . . .” Parker v Baldwin, 216 Mich 472, 474; 185 NW 746 (1921) (emphasis added). Further, “[n]o contract or agreement is a promissory note which does not provide for the payment of money, absolutely and unconditionally.” Id. (emphasis added). Thus, a promissory note is more than a contract to repay a loan: it is a written instrument that embodies a formal promise to repay. See MCL 440.9102(l)(uu) and (mmm); MCL 440.3104. The case at hand, however, involves informal oral contracts, which do not meet the strict formalities of a promissory note. Therefore, in determining when the period of limitations begins to run on an oral contract that does not specify the terms for repayment, this Court should apply caselaw dealing with general *244 breach of contract actions, such as Smith Estate, rather than those cases that deal with the hypertechnical code of negotiable instruments.
In addition, the only justification that Justice MARKMAN gives for applying Palmer is that doing so is supported by the policies that underlie the statute of limitations. While I agree with Justice MARKMAN that those policies are strongly implicated when dealing with an oral agreement, Smith Estate properly addressed this issue without subjecting informal oral agreements to the more stringent rules regarding promissory notes. See Smith Estate, 91 Mich at 11-12.
Also, unlike the parties in Palmer, the parties here did not formulate a written unconditional promise to repay within 30 days after demand. See Palmer, 36 Mich at 490. In contrast, here there were merely oral requests to borrow money, which prompted plaintiff to write 11 checks over a span of several years. Wfiiile plaintiff expected that she would be repaid, there were no specific agreements about repayment or promises to repay the borrowed funds. Thus, as noted, in contrast to Justice MARKMAN’s assertion, there were no “express terms” of the contracts that contemplated immediate payment.
Finally, applying Palmer’s view that the period of limitations begins to run on the date of delivery, and therefore no demand is necessary, is inconsistent with this Court’s declarations regarding basic contract principles. In essence, Palmer puts the oral-contract borrower in immediate breach of the contract and thus makes a loan that had no specified time set for repayment due immediately. This conflicts with our pronouncement that “when a contract is silent as to time of performance or payment, absent any expression of a contrary intent, the law will presume a reasonable time.” Duke v Miller, 355 Mich 540, 543; 94 NW2d 819 *245 (1959). Moreover, application of Palmer here contravenes common sense: informal oral loans are handshake agreements that intuitively are not breached at the time of the handshake. It would be nonsensical to assume that informal loans that consisted of thousands of dollars would be due immediately, as they would be under Palmer. My application of Smith Estate does not subject informal oral handshake-type agreements to the strict formalities of promissory notes, and it is consistent with this Court’s pronouncements regarding basic contract principles.
In sum, Justice MARKMAN’s construct represents one end of the spectrum on this issue. He would have accrual occur at the inception of the loan, which I think would prematurely trigger the running of the period of limitations because it contradicts both the facts of this case and this Court’s general pronouncements on oral contracts. In essence, Justice MARKMAN gives the interests supporting the statute of limitations too much weight. Justice YOUNG, in contrast, represents the other end of the spectrum. Under his construct, the purposes of the statute of limitations are given too little respect because a claimant can extend the accrual of his claim indefinitely. I recognize that both constructs represent good-faith attempts to balance the tenets of statutes of limitations with the countervailing principles of contract law. However, I find them both to be out of balance. I think that applying Smith Estate to this issue achieves the best balance between the concern of ensuring that contracts will be enforced and the competing concern that claims will not become stale.
III. CONCLUSION
For all these reasons, I would reverse the judgment of the Court of Appeals on both issues.
*246 KELLY, C.J., concurred with CAVANAGH, J.

 In Michigan, the common law governs unless it has been abrogated by-statute. Albro, 434 Mich at 286 n 6, citing Myers v Genesee Co Auditor, 375 Mich 1; 133 NW2d 190 (1965), and Bugbee v Fowle, 277 Mich 485, 492; 269 NW 570 (1936).

 Justice Corrigan’s opinion cites a section from the American Law Reports Annotated 2d to support its position that a judgment granting partition must be entered before a joint tenant’s death in order to sever *232 the joint tenancy. Ante at 214. The quotation used by her opinion, however, cites California law and therefore ignores the effect that Michigan’s survival statute has on actions that arise under the Revised Judicature Act, such as the partition action here.

 Justice Corrigan’s opinion ignores both the language of and this Court’s pronouncements regarding Michigan’s survival statute. It merely points to a “universal rule” that was pronounced by a Missouri court to *233 explain why defendant’s interest in the land did not survive his death. Ante at 214. I query why her opinion cites a Missouri case for its “universal rule,” yet fails to cite a single case from this Court. Certainly, the Missouri court was not considering the effect of Michigan’s survival statute when analyzing the partition claim before it. It belies logic and the intent of our Legislature to interpret the survival statute as allowing a deceased claimant’s claim to survive under Michigan’s survival statute, yet terminate the action on the basis of the claimant’s death.

 The period of limitations for a contract claim is six years from the accrual date. MCL 600.5807(8).

 The facts of the contractual relationship in Smith Estate are very similar to those in the instant contractual relationship. In both cases, the parties orally agreed that one party would loan personal properly to the other party. In both cases, the party loaning the property kept a ledger or list of the separate loans made throughout a period of years. In both cases, neither party expressly contemplated when the loans would be due for repayment.

 See Keithler, 22 Ohio St at 32 (stating that “where no demand is shown to have been made within the statutory period for bringing the action,... for the purpose of setting the statute in operation, a demand will be presumed at the expiration of that period, from which time the statute will begin to run”).

 Intuitively, if an actual demand occurred before the presumed demand, accrual would occur at the time of the actual demand.

 Smith Estate held that
[t]his rule gives the party six years in which to make his demand, and six years in which to commence his suit after demand, in all cases where a demand is necessary before suit. See Keithler v. Foster, 22 Ohio St. 27 [1871]; Massie v. Byrd, 87 Ala. 672 (6 South. Rep. 145) [1889]; Thrall v. Mead’s Estate, 40 Vt. 540 [1868]; Codman v. Rogers, 10 Pick. 119 [27 Mass 112 (1830)]; Mitchell v. McLemore, 9 Tex. 151 [1852]; Eborn v. Zimpelman, 47 [Tex] 503 [1877]; Morrison’s Adm’r v. Mullin, 34 [Pa] 12 [1859]; Ball v. [Keokuk & N W R] Co., 62 Iowa, 751 (16 N. W Rep. 592) [1883]; Lower v. Miller, 66 [Iowa] 408 (23 N. W. Rep. 897) [1885]; Ang. Lim. § 96; Bus.Lim. § 159. [Smith Estate, 91 Mich at 11-12.]

 This is because the latest reasonable time for plaintiff to make a demand on an oral loan made in November 1992 would be six years later — November 1998. And each of the claims on the pre-November 1992 loans would be time-barred because plaintiff filed her complaint covering all the loans in November 2004.

 Justice Young contends that Smith Estate is distinguishable and, as a result, I am incorrectly extending that case by applying it here. Smith Estate dealt with the claim that the trial court wrongly precluded a certain witness’s testimony. Smith Estate, 91 Mich at 8-9. That testimony would have been used to support the plaintiffs claim that the contract was a loan, rather than a sale. Id. at 9. It is true that Smith Estate concluded that the contract at issue was one for a sale, rather than a loan. But the Court went on to clearly explain that, if the testimony had been wrongly rejected, and if the contract was a loan, the error would have been harmless because the plaintiffs claim would have been untimely under the presumed-demand rule. Id. at 11-13. In fact, the unanimous Smith Estate Court expressly adopted the rule from the Ohio decision Keithler v Foster for the exact issue that is presented in the instant case. Id. at 12. The Keithler court clearly noted that
the statute [of limitations] begins to run, in cases like this, from the time of demand, [and] it would be but reasonable to hold, in the absence of other special circumstances, where no demand is shown to have been made within the statutory period for bringing the action, that, for the purpose of setting the statute in operation, a demand will be presumed at the expiration of that period, from which time the statute will begin to run. [Keithler, 22 Ohio St at 31-32.]
Thus, Smith Estate held that if the testimony had been admitted, and the contract had been seen as an oral loan with no specified time for repayment, this rale would apply. Thus, I find Smith Estate to be directly on point and persuasive. Further, to the extent that this portion of Smith *237 Estate was dictum, I would adopt it as the controlling rule on this issue, which is exactly what our colleagues in Smith Estate unanimously said that they would do.

 In fact, the jury’s own words belie Justice Markman’s contention that the parties did not contemplate delay in repayment. The jury stated that the oral loans were due at the time plaintiffs claim was filed, which was years after the loans were consummated. The jury answered a special interrogatory form regarding each loan as follows: “[Plaintiff] established ... that there was an enforceable contract between [plaintiff] and [defendant], that this check was a loan expected to be repaid and [that] repayment is now owed to [plaintiff].” The jury did not conclude that payment was owed upon delivery. Justice Markman disagrees because he thinks that “the mere fact that the jury concluded that ‘repayment is now owed’ does not necessarily mean that the jury either concluded that repayment was not owed as soon as the money was borrowed or that the parties did ‘contemplate delay in repayment.’ ” Ante at 224 n 3. I disagree. The jury was tasked to decide whether the claims were timely. The jury decided that all of plaintiffs claims were timely and that payment was “now” due. “Now” could only mean at the time the jury made its decision because, if “now” also applied to when the loans were created, many of the claims would have been untimely because they came into existence more than six years before the claims were filed. Thus, the jury’s conclusions do not support Justice Markman’s supposition that the parties did not contemplate delay in payment.

 I do not point to these possible interpretations of the instant agreements’ terms to definitively say what the parties intended regarding delay in payment. Justice Markman mistakes my point if that is what *241 he sees as motivating my reference to them. Instead, I simply note that these facts undercut Justice Markman’s assertion that “the express terms of the instant contracts no more contemplated delay than did the express terms of the contract in Palmer [v Palmer, 36 Mich 487 (1877)].” Ante at 223 n 3. This is important because Justice Markman’s position depends on equating Palmer’s demand note with the instant oral contracts. Thus, I merely note that Justice Markman’s linking of the two disparate types of agreements is not supported by their facts. Justice Markman also asks whether I would leave the statute of limitations issue to the jury. Ante at 224 n 3. He seems to think that my references to this case’s facts and the jury’s conclusion undercut my adoption of the Smith Estate construct. I think that this opinion plainly notes that I conclude that, under Smith Estate, the statute of limitations issue for an oral loan having no specified time for repayment is a question of law for the court. That conclusion is not undermined by my pointing out that Justice Markman’s position of applying Palmer by analogy, which relies on the facts, is not supported by the facts of this case. Moreover, the “express terms” debate that Justice Markman and I are engaged in shows how foolhardy undertaking such an endeavor is for this type of oral loan. Yet that endeavor is required for Justice Markman to link Palmer to this case, whereas my approach requires no such legal groping.

 Justice Markman accepts that oral loans are impliedly due on demand and that accrual occurs on that demand. Noting his acceptance of this, I am perplexed about why Justice Markman finds it anomalous that some oral loans accrue later than other oral loans. His example shows that he thinks it is inappropriate that a lender who makes an immediate demand has less time to bring a claim than a lender who never makes a demand. Despite Justice Markman’s aversion to it, this dynamic does not contravene the theory that an oral loan is due on demand and accrual occurs at demand. It seems that Justice Markman’s perception of an anomalous result is caused by something he already accepts: if “no time is set for the repayment of borrowed money, the loan is impliedly payable on demand.” Ante at 221-222, citing Colburn. Indeed, Colburn’s holding necessarily puts the lender in a position to set when payment is due. Thus, Justice Markman is correct to note that this rule can conceivably lead to an oral loan being due in any length of time, as set by the lender. If this is what concerns Justice Markman, it is Colburn that causes his consternation, not my application of Smith Estate. Nonetheless, I can sympathize with him because I too sense a conflict between the statute of limitations and a lender being free to harbor his claim indefinitely by not making a demand. Yet I do not think that the solution to this concern is to force the oral-loan square peg into the demand-note round hole. But that is what Justice Markman does by insisting, against reason, that an oral loan is legally the same as a “demand note,” which by its mere name indicates a demand upon delivery. See the discussion later in this opinion. Instead, I find the Smith Estate construct to be much more applicable here because it was actually espoused to deal with this very issue. It handles the concern that Justice Markman and I share because it precludes lenders *243 from extending accrual of their claims indefinitely by only allowing such an extension for up to six years. Moreover, it avoids having the necessity of accepting the illogical premise that, when an oral request to borrow money is accepted, repayment is due at the instant the lender hands the money over to the borrower.