**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 30, 2009

JOAN B. JACKSON,

Plaintiff-Appellee,

v

No. 136423

ESTATE OF RONALD GREEN,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

We granted leave to appeal to consider whether an action to partition real estate may go forward when the joint tenant who filed the action died before an order of partition entered.[1] We would hold that title vested in the surviving joint tenant on the decedent's death because the mere filing of a partition action does not sever a joint tenancy and no order granting partition was entered before the death. We would thus affirm the trial court's denial of defendant's motion for

---

[1] We also granted leave to appeal to consider whether the statute of limitations bars plaintiff's claim for breach of contract. That issue is addressed in separate opinions by Justices Cavanagh, Young, and Markman.

summary disposition and the judgment of the Court of Appeals on the partition issue.

## I. FACTS AND PROCEEDINGS

At issue in this case are two parcels of real estate held by plaintiff and defendant as joint tenants and a series of oral loans from plaintiff to defendant.[2] In May 1991, defendant negotiated the purchase of a parcel of land on behalf of plaintiff, and the deed conveyed the land to both parties as joint tenants. In September 1991, plaintiff purchased a second parcel of property, which was conveyed to plaintiff and defendant as joint tenants with full rights of survivorship.

In 2004, plaintiff filed a breach of contract action, alleging that defendant had failed to repay the loans. Plaintiff also sought to force defendant to relinquish his right to the two parcels of land. The trial court granted summary disposition for defendant regarding the deeds for the properties, holding that the deeds were properly executed and gave defendant valid property interests. Regarding the loans, the court did not accept defendant's argument that the statute of limitations barred plaintiff's claim. A jury found that each check plaintiff issued to defendant was a loan, and the court entered judgment on the verdict in plaintiff's favor.

_____

[2] The defendant's estate was substituted as a party when the original defendant died, but for ease of reference we will refer to both the original defendant and his estate as "defendant."

Defendant then filed a separate action for partition of the parcels. At plaintiff's request, the partition action was stayed pending the appeal in this case. Defendant unexpectedly died while the appeal was pending in the Court of Appeals. His estate was substituted as the plaintiff in the partition action and as the defendant in this case.

The Court of Appeals affirmed the trial court's ruling that defendant possessed a valid property interest in the two parcels, but held that because no order severing the joint tenancy had issued in the partition action before defendant died, defendant's interests in the parcels reverted to plaintiff upon defendant's death. The Court of Appeals further held that the statute of limitations did not bar plaintiff's breach of contract action for repayment of the loans because the claim did not accrue until plaintiff demanded repayment by filing her complaint in 2004.[3]

We granted defendant's application for leave to appeal.[4]

## II. STANDARD OF REVIEW

Whether a partition action may go forward if a joint tenant dies before the joint tenancy is severed is a question of law that we review de novo. *Cardinal*

---

[3] *Jackson v Green Estate*, unpublished opinion per curiam of the Court of Appeals, issued April 1, 2008 (Docket No. 269244).

[4] 482 Mich 981 (2008).

*Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

### III. PARTITION

We agree with the Court of Appeals that defendant's interest in the parcel of land [5] automatically reverted to plaintiff when defendant died. Thus, defendant's estate has no interest in the property, and even if defendant's partition action survived his death under Michigan's survival statute, MCL 600.2921, nothing remains to partition.

"The principal characteristic of the joint tenancy is the right of survivorship. Upon the death of one joint tenant, the surviving tenant or tenants take the whole estate." *Albro v Allen*, 434 Mich 271, 274-275; 454 NW2d 85 (1990). An ordinary joint tenancy[6] may be severed, and the right of survivorship thereby destroyed, by an act of the parties, conveyance by either party, or levy and sale on an execution against one of the parties. *Id*. at 275.

----

[5] Only the parcel conveyed in the May 1991 deed is currently at issue. Defendant does not dispute plaintiff's right of survivorship in the property conveyed in the September 1991 deed.

[6] In addition to an ordinary joint tenancy, Michigan recognizes a distinct category of joint tenancy known as a "joint tenancy with full rights of survivorship," which consists of a joint life estate with dual contingent remainders. *Albro*, *supra* at 275; see also 1 Cameron, Michigan Real Property Law (3d ed), § 9.11, p 322. "While the survivorship feature of the ordinary joint tenancy may be defeated by the act of a cotenant, the dual contingent remainders of the 'joint tenancy with full rights of survivorship' are indestructible." *Albro*, *supra* at 275-276. The parcel at issue here, the one conveyed in the May 1991 deed, was held under an ordinary joint tenancy.

A party can sever a joint tenancy by compelling a partition. *Smith v Smith*, 290 Mich 143, 155; 287 NW 411 (1939), quoting *Midgley v Walker*, 101 Mich 583, 584; 60 NW 296 (1894). Until an order of partition has been entered, however, a partition has not been compelled and, thus, the joint tenancy has not been severed. See anno: *What acts by one or more of joint tenants will sever or terminate the tenancy*, 64 ALR2d 918, 956 (explaining that "[i]t is not the filing of the partition action which terminates the joint tenancy, but only the judgment in such action which has that effect") (quotation marks and citation omitted).

Indeed, the universal rule in the United States is that a pending suit for partition does not survive the death of one of the joint tenants. See *Heintz v Hudkins*, 824 SW2d 139, 142-143 (Mo App, 1992), and cases cited therein. "This rule is based on two related concepts: First, the theory of survivorship—that at the moment of death, ownership vests exclusively in the surviving joint tenant or tenants—and second, the doctrine that severance of the joint tenancy does not occur until the partition suit reaches final judgment." *Id.*, citing *Cobb v Gilmer*, US App DC 398, 400; 365 F2d 931 (1966).

Accordingly, we would hold that the filing of the partition action did not sever the joint tenancy because an order effectuating a partition had not entered at the time of defendant's death. Therefore, regardless whether defendant's partition action survived his death under the survival statute, his interest in the parcel of land did not.

5

## IV. CONCLUSION

We would hold that defendant's filing of the partition action did not sever the joint tenancy because no order granting partition was entered before defendant's death. Thus, title vested in plaintiff when defendant died, and nothing remains to partition. The Court of Appeals correctly analyzed the partition issue, and we would therefore affirm its judgment on that issue.

Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

JOAN B. JACKSON,

      Plaintiff-Appellee,

v                                  No. 136423

ESTATE OF RONALD GREEN,

      Defendant-Appellant.

_____

YOUNG, J.

I agree with the analysis set forth in Justice Corrigan's opinion, which affirms the Court of Appeals on the partition issue. I would further hold that the statute of limitations does not bar plaintiff's claim for breach of contract on the series of oral agreements for loans. Because the loans were made with no fixed time of repayment, they were payable on demand. The period of limitations would not begin to run on such a claim until either a demand was made, expressly or by filing a complaint, or a reasonable amount of time had elapsed without a demand. In this case, no demand was made until the action was filed.

The issue of when a period of limitations begins to run on an oral agreement for a loan that has no fixed date of payment is a question of law that we review de novo. *Collins v Comerica Bank*, 468 Mich 628, 631; 664 NW2d 713 (2003).

The applicable limitations period for plaintiff's breach of contract claim is six years. MCL 600.5807(8). The central issue here is when the limitations period began to run. "Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues." MCL 600.5827. Moreover, a claim generally accrues when the wrong is done. *Boyle v Gen Motors Corp*, 468 Mich 226, 231; 661 NW2d 557 (2003).

> The general rule governing the commencement of the running of the statute of limitations is that the statutory period is computed from the time when the right of action that the plaintiff seeks to enforce first accrued; ordinarily, *in an action based on a contract, accrual occurs as soon as there is a breach of contract*, with some courts qualifying this by stating that accrual occurs when the promisee discovers or should have discovered the breach, and others stating that accrual occurs upon breach, whether or not the promisee is then aware of the breach. [31 Williston, Contracts (4th ed), § 79:14, pp 303-307 (emphasis added).]

In determining when the period of limitations begins to run on a loan that has no repayment term, we must therefore necessarily determine when a breach of contract occurs.

The oral loan agreements in this case did not set a time for repayment. There is no controlling caselaw that establishes when a borrower is in breach of an oral loan agreement that is silent concerning when repayment must occur. Thus, this Court should articulate a rule of law to determine when a breach occurs under the circumstances in this case.

We do have some established bedrock principles to guide us in formulating such a rule. A loan made with no fixed time of repayment is payable on demand.

2

*Colburn v First Baptist Church & Society of Monroe*, 60 Mich 198, 200; 26 NW 878 (1886). As a general matter, because no terms of repayment were specified in the contracts, the oral loan agreements could not have been breached until payment was demanded and the demand was rebuffed.

Nevertheless, the absence of a specific time for repayment does not allow a creditor to withhold this demand for an indefinite period of time. In the absence of an agreement to the contrary, we presume that the parties intended plaintiff's demand for repayment to occur within a reasonable amount of time. See *Duke v Miller*, 355 Mich 540, 542-543; 94 NW2d 819 (1959) ("[W]hen a contract is silent as to time of performance or payment, absent any expression of a contrary intent, the law will presume a reasonable time."); *Pierson v Davidson*, 252 Mich 319, 324; 233 NW 329 (1930) ("It is a general rule of law that where no time is stipulated, a reasonable time will be presumed. Reasonable time depends upon the facts and circumstances of each case.").[1] Determining what constitutes a reasonable amount of time to request repayment of a loan is necessarily a factual question properly decided by the jury.

---

[1] Although Justice Cavanagh criticizes my citation of *Pierson*, this proposition is a well-established tenet of Michigan's contract law. Indeed, *Smith v Smith Estate*, 91 Mich 7; 51 NW 694 (1892), which Justice Cavanagh applies to the instant case, established the very principle he criticizes in this opinion. *Smith* explained that a demand for payment "should, upon principle and the best authority, have been made within a reasonable time . . . ." *Id.* at 11.

Ultimately, a breach is the *sine qua non* of any contract dispute regarding repayment. Justices Markman and Cavanagh provide alternative theories of when a breach occurs if the parties failed to supply a repayment term. Justice Markman determines that a breach occurs *immediately on payment of the loan principal.* Justice Cavanagh determines that a breach occurs *exactly six years after payment of the loan principal.* Neither theory comports with the practice of parties, especially in a case like this, which involved a series of loans made over a period of eight years.

Justice Markman would extend the rule articulated in *Palmer v Palmer*, 36 Mich 487 (1877). In *Palmer*, this Court held that "a note payable on demand is payable at once and without demand, so that the statute runs from its delivery." *Id*. at 491. The central rationale of the *Palmer* rule was to prevent a creditor from keeping a debt alive by declining to make a demand until evidence grew stale, thereby defeating the statute of limitations. "If a creditor has the means at all times of making his cause of action perfect, it would be unjust and oppressive to hold that he could postpone indefinitely the time for enforcing his claim by failing to present it." *Id*. at 494.[2]

---

[2] See also *Citizens' Savings Bank v Vaughan*, 115 Mich 156, 159; 73 NW 143 (1897) ("[T]he universal rule is that [a demand] note is due at once, and that no demand is necessary before bringing suit."); *Taylor v Rugenstein*, 245 Mich 152, 154; 222 NW 107 (1928) ("The general rule is that suit may be brought on a demand note immediately after delivery, and therefore the statute of limitations begins to run from the day of delivery.").

4

*Palmer* and its progeny thus recognized an implied demand for repayment of *written* demand notes. This Court has not applied the *Palmer* holding to oral loan agreements. I can discern no reason to extend what is essentially a legal fiction—that a breach occurs immediately upon the making of a loan even though no actual demand was made—to oral loan agreements.

I believe that the principle of law articulated in *Palmer*, which presumes a demand for repayment—and therefore a breach—immediately upon payment of the loan principal, is illogical and entirely inconsistent with contracting parties' intent. I suspect that no one making or receiving a loan believes that the recipient is *automatically* in breach of the loan as soon as the principal is paid. However, this is the "logic" of the *Palmer* rule. For this reason, I would not extend *Palmer* beyond its facts.

Justice Cavanagh would extend the mechanical rule established in *Smith v Smith Estate*, 91 Mich 7; 51 NW 694 (1892), to bar recovery on any loan made more than 12 years before the plaintiff filed her complaint. *Smith* concluded that, when no express demand for payment has been made, "a demand should be presumed at the expiration of the time when an ordinary money claim would be barred by the statute [of limitations]," *id*. at 11, that is, six years. A breach would then automatically occur after six years, and the creditor would then have an additional six years to bring a cause of action for payment. In this respect, *Smith* suffers from the same wooden approach as *Palmer* in determining when a breach of a contract occurs if the parties have not supplied a term for repayment. Why,

5

given all the variables in a contractual relationship, is six years ineluctably a "reasonable" time in which to make a demand? In this very case, the lender continued to make a series of new loans—a fact that would seem to undermine either the *Palmer* "breach on payment of the loan" or the *Smith* "six years equals a breach" theory.

*Smith* is distinguishable from the instant case because it involved not a monetary loan, but a sale of logs. "[W]e have no doubt that the transaction was a sale . . . ." *Id.* Although the *Smith* Court would have applied this rule to loans, see *id.* at 12, that discussion was dictum. I would not extend this strict rule to the context of a loan, as the rule fails to take into account the particular circumstances of a given loan. Instead, I would leave the question whether a plaintiff waited an unreasonable amount of time before demanding repayment to the wisdom of a jury.

Plaintiff here did not demand repayment until filing this action. In the absence of a demand for repayment, defendant could not have breached the loan agreements until a reasonable time in which to have made a demand had elapsed.[3]

---

[3] Under the rule established in *Brion v Kennedy*, 47 Mich 499; 11 NW 288 (1882), if no demand for repayment is made before the filing of the complaint, the filing of the complaint is considered to be the demand. The central inquiry in this type of case is whether the plaintiff's demand for repayment occurred within a reasonable period following the loan or whether that reasonable period elapsed— and therefore the period of limitations began to run—before the express demand for repayment.

Any breach of contract claim would need to have been filed within six years of that time because the limitations period would not have begun to run until that time. I agree with the Court of Appeals that "it was not error for the [circuit] court to determine that the nature of the disbursements, and consequently whether plaintiff's claims regarding the alleged loans were barred by the applicable statute of limitations, was a question of fact that was properly decided by a jury."

In conclusion, I would hold that the statute of limitations did not bar plaintiff's breach of contract claim because plaintiff did not make a demand for repayment until she filed this lawsuit and no breach of contract could have occurred unless and until a demand was made and refused or a reasonable amount of time had elapsed without a demand. I agree with the Court of Appeals that the finder of fact properly decided this case.

Robert P. Young, Jr.
Maura D. Corrigan

7

S T A T E   O F   M I C H I G A N

SUPREME COURT

JOAN B. JACKSON,

      Plaintiff-Appellee,

v                                                                           No. 136423

ESTATE OF RONALD GREEN,

      Defendant-Appellant.

_____

MARKMAN, J.

      I agree with Justice Corrigan's opinion, which would affirm the Court of Appeals on the partition issue. I agree that title vested in the surviving joint tenant on the decedent's death because the mere filing of a partition action does not sever a joint tenancy when no order granting partition was entered before the death. However, I would reverse the judgment of the Court of Appeals on the statute of limitations issue. I disagree that the statute of limitations does not bar recovery on any of the loans. Instead, I would hold that the statute of limitations bars recovery on all but the last loan made because it is the only one to fall within the six-year limitations period. MCL 600.5807(8).

      Plaintiff filed this action, claiming that she gave defendant's decedent a series of checks as loans totaling more than $50,000, for which the parties did not have written contracts. Rather, defendant's decedent allegedly asked to borrow money at various times over a period of years. Defendant moved for summary

disposition, arguing that the statute of limitations barred the claim, and the trial court denied the motion. A jury found that all the checks were loans, all but one of which had not been repaid. The Court of Appeals upheld the denial of summary disposition on the statute of limitations issue, *Jackson v Green Estate*, unpublished opinion per curiam, issued April 1, 2008 (Docket No. 269244),[1] and this Court granted leave to appeal, 482 Mich 981 (2008).

I would hold that the period of limitations expired for all but the last loan. The Court of Appeals correctly observed that if no time is set for the repayment of borrowed money, the loan is impliedly payable on demand. See *Colburn v First Baptist Church & Society of Monroe*, 60 Mich 198; 26 NW 878 (1886).[2] But

---

[1] Decedent died while the appeal was pending. His estate was substituted as the defendant.

[2] Justice Young's "reasonable time" approach is inconsistent with *Colburn*, 60 Mich at 200, because *Colburn* held that a loan made with no fixed time for repayment is payable on demand. That is, such a loan is "impliedly payable on demand," *id.*, not after some "reasonable time." Moreover, his reliance on *Pierson v Davidson*, 252 Mich 319, 324; 233 NW 329 (1930), for the proposition that "where no time is stipulated, a reasonable time will be presumed," is misplaced because this language was clearly dictum, since *Pierson* immediately thereafter held, "However, it does not even become necessary for us to determine what was the reasonable time, for the parties themselves stipulated that the title should be cleared by February 1, 1929 . . . ." I believe his reliance on *Duke v Miller,* 355 Mich 540; 94 NW2d 819 (1959), is also misplaced because, unlike the instant case, *Duke* did not involve when a period of limitations begins to run; instead, it only addressed whether a memorandum that does not specify the time for payment is sufficient under the statute of frauds as evidence of an agreement to sell land. Incidentally, I am also perplexed by Justice Cavanagh's position because, although he criticizes Justice Young at length for adopting the "reasonable time" approach, *post* at 12-14, he then appears to adopt it himself, *post* at 20.

2

when does the period of limitations begin to run on a loan that is payable on demand? Does it begin running when the loan is made, when payment is demanded, or at some other time? This Court answered that question in *Palmer v Palmer*, 36 Mich 487, 491 (1877):

> It is now well settled that a note payable on demand is payable at once and without demand, so that the statute runs from its delivery. And this rule has been applied where from the form of the contract it is manifest that immediate payment was not expected.

*Palmer* proceeded to explain the rationale for this rule:

> For if the debt did not become payable until fixed by demand, and the demand was optional with the creditor, no tender could be made which would bind him, and he could keep the debt alive in spite of the debtor, for an indefinite period. If there was any infirmity in the consideration, or any defect in the binding character of the obligation, he might retain it until all testimony was lost, and defeat the defense. This is the mischief which the statutes of limitation were intended to remedy . . . .
>
> * * *
>
> We cannot but think this to be sound doctrine; whatever may have been the ancient prejudice against statutes of limitation they are now regarded as just and entitled to be fairly construed. If a creditor has the means at all times of making his cause of action perfect, it would be unjust and oppressive to hold that he could postpone indefinitely the time for enforcing his claim by failing to present it. He is really and in fact able at any time to bring an action, when he can by his own act fix the time of payment. It is no stretch of language to hold that a cause of action accrues for the purpose of setting the statute in motion as soon as the creditor by his own act, and in spite of the debtor, can make the demand payable. It may be otherwise, possibly, where delay is contemplated by the express terms of the contract, and where a speedy demand would manifestly violate its intent.[3] But where no delay is contemplated the rule is

_____

[3] In *Smith v Smith Estate*, 91 Mich 7, 9; 51 NW 694 (1892), the decision on which Justice Cavanagh primarily relies to conclude that the period of limitations

3

did not begin to run until six years after the loans were made, delay was contemplated by the express terms of the contract, i.e., "when Armstrong came to him to request a loan of the logs to Eugene, Abram said to him, in substance, that he might have them, as he had more than he needed at that time, but they must be returned to him when he demanded them"; "it was contemplated between the parties that logs of like kind and quality should be returned as soon as Eugene's logs . . . came down the stream and into the St. Clair river." By contrast, the express terms of the instant contracts no more contemplated delay than did the express terms of the contract in *Palmer*. Given that Justice Cavanagh concedes that the only "express term" of the instant contracts is that "defendant asked to borrow money from plaintiff," *post* at 15, I am not quite sure why he disagrees with my conclusion that the express terms of the contracts did not contemplate delay any more than the *Palmer* contract. He appears to suggest that the fact that "there were no 'express terms' of the contracts that contemplated immediate payment," *post* at 20, is the equivalent of meaning that the express terms contemplated delay. However, the express terms in these contracts simply did not *address* whether delay was or was not contemplated, because, as Justice Cavanagh earlier explained, the only express term of the contracts was that defendant "borrow[ed]" money from plaintiff. *Post* at 15. In addition, it is noteworthy that, although Justice Cavanagh criticizes Justice Young for relegating to a jury the determination whether claims are barred by the statute of limitations, *post* at 12-14, he nevertheless relies on the jury's alleged conclusion that the parties did "contemplate delay in repayment," *post* at 15 n 11, to conclude that the period of limitations did not begin to run immediately. Would Justice Cavanagh leave the statute of limitations issue up to the jury or not? Contrary to Justice Cavanagh's contention, *post* at 15 n 11, the mere fact that the jury concluded that "repayment is now owed" does not necessarily mean that the jury either concluded that repayment was not owed as soon as the money was borrowed or that the parties did "contemplate delay in repayment." Further, *Smith* limited its holding to cases in which "a demand is necessary," 91 Mich at 12, and, as discussed earlier, a demand was not necessary in this case. *Palmer*, 36 Mich at 491 (stating that "a note payable on demand is payable at once and *without demand*") (emphasis added). For these reasons, I believe that *Palmer*, rather than *Smith*, is controlling in this case.

Moreover, extending *Smith* to the instant circumstances would anomalously provide those parties who *never* make a timely demand with a longer period in which to bring an action than those parties who *do* make a timely demand. Justice Cavanagh claims that we "simply disagree on when accrual should occur." *Post* at 17. Although this is correct, the accrual date makes all the difference. Under Justice Cavanagh's position, if a demand is made immediately after the loan is

4

just and reasonable; and the presentment should be reasonably prompt, or the creditor should be subjected to the operation of the statute. [*Id.* at 491, 494.]

*Palmer* was followed in later cases. See, e.g., *Beardsley v Webber*, 104 Mich 88, 89; 62 NW 173 (1895) ("No demand is necessary on a demand note . . . ."); *Citizens' Savings Bank v Vaughan*, 115 Mich 156, 159; 73 NW 143 (1897) ("[T]he universal rule is that [a demand] note is due at once, and that no demand is necessary before bringing suit."); *Peninsular Savings Bank v Hosie*, 112 Mich 351, 355; 70 NW 890 (1897) ("'If the instrument be payable on demand, the statute begins to run immediately.'") (citation omitted); *Taylor v Rugenstein*, 245

---

made, the claim will accrue immediately and the period of limitations will expire in 6 years from the date of the loan; however, if no demand is ever made, the claim will not accrue until 6 years have passed, and the period of limitations will not expire until 12 years after the loan was made. How can this be characterized as anything but an anomalous result? Justice Cavanagh asserts that he is "perplexed" about why I believe this to be an anomalous result. *Post* at 17 n 13. I believe this to be so because, under Justice Cavanagh's approach, the plaintiff has complete control over when his action accrues, and thus when the period of limitations begins to run. What concerns me is not the fact alone that the plaintiff would get more time; rather, it is that the plaintiff would get to choose exactly how much time he would have to bring an action. If the plaintiff wanted to file his action immediately, he could do so; if, on the other hand, he wanted to wait 10 or 11 or 12 years, he could do that as well. Contrary to Justice Cavanagh's contention, *post* at 17 n 13, *Colburn* provides the plaintiff with such unfettered authority only if one ignores *Palmer*, which held that because no demand is necessary, the period of limitations begins to run immediately. Thus, my "consternation" is not caused by *Colburn*, but by Justice Cavanagh's disregard of *Palmer*. *Post* at 18 n 13. Finally, contrary to Justice Cavanagh's contention, my "insistence . . . that accrual must occur at the loan's inception" is not "contrary to the general rule," *post* at 17; rather, it is, in fact, in accord with the general rule both in Michigan, see *Palmer*, and in a vast majority of other jurisdictions, see n 5 of this opinion.

5

Mich 152, 154; 222 NW 107 (1928) ("The general rule is that suit may be brought on a demand note immediately after delivery, and therefore the statute of limitations begins to run from the day of delivery.").

In light of these authorities, the Court of Appeals erred, in my judgment, when it stated that "the statute of limitations would not begin to run on such a claim until a demand for repayment was made . . . ." *Jackson*, unpublished opinion at 5.[4] *Palmer* and its progeny established that the period of limitations begins to run from the day that a demand note is delivered, unless a contrary intention is apparent. While those cases addressed written demand notes, there is no apparent reason why *Palmer* should not equally apply to an oral contract.[5] In

---

[4] Likewise, Justice Young errs by reaching the same conclusion because *Palmer* specifically rejected this. In *Palmer*, this Court explained:

> The [lower] court found that the suit was not barred. This conclusion was based on the theory that until demand [was] made no action accrued; and that as the time limited by the statute runs from the time when action accrues, it did not begin to run until thirty days after [the demand was made]." [*Palmer*, 36 Mich at 490.]

*Palmer*, however, rejected this analysis, reversed the lower court's judgment, and held that the period of limitations began running immediately upon delivery. In addition, Justice Young's conclusion that there is no breach, and thus that the action does not accrue until a demand has been made is inconsistent with the undisputed fact that, once money is borrowed, an action seeking repayment can be brought at any time. Because an action cannot be brought until it has accrued, it necessarily follows that once money is borrowed, the action accrues immediately and, thus, the period of limitations begins to run immediately. For this reason, I disagree with Justice Young that the *Palmer* rule is "illogical" and "inconsistent with contracting parties' intent." *Ante* at 5.

[5] Indeed, the majority of other jurisdictions have held that the period of limitations begins to run from the date the borrowed money is given to the

6

fact, the policies underlying statutes of limitations are implicated even more strongly in the latter circumstances because it is more difficult to produce evidence to defend against a stale claim of an oral agreement.[6]

---

borrower under an unwritten or verbal agreement to repay. See anno: *When statute of limitations begins to run against action based on unwritten promise to pay money where there is no condition or definite time for repayment*, 14 ALR4th 1385, 1388 ("Reasoning that oral loans without any due date or provision for repayment occupy the same legal status as obligations due on demand, the court said that the statute of limitations period begins to run against suits based on demand obligations, and consequently against suits based on loans without repayment provisions, from the time the obligations or loan agreements are entered into by the parties."), citing *Gentry v Gentry*, 59 NM 395; 285 P2d 503 (1955). Justice Cavanagh would reach another anomalous result in which, although the period of limitations would start running under *Palmer* immediately with regard to *written* contracts, the period of limitations would not start running with regard to *oral* contracts until either a demand was made or six years had elapsed. That is, according to Justice Cavanagh, the period of limitations should be longer for oral contracts than for written contracts, despite the fact that it is often considerably more difficult to establish the terms of an oral contract, as demonstrated by this very case.

[6] Unlike Justice Young, I would not leave it to a jury to determine when a "reasonable" time to make a demand has elapsed. I cannot think of a procedure more likely to undermine one of the principal purposes of a statute of limitations, namely, to establish at least some modicum of certainty with respect to the period within which a lawsuit can be brought in response to allegedly wrongful conduct. Not only is Justice Young's rule inconsistent with *Palmer*, 36 Mich at 491, and *Colburn*, 60 Mich at 200, as discussed earlier, I do not believe that he has demonstrated why stare decisis should not be followed with regard to these decisions, which have adequately served this state for well over a century. See *Robinson v Detroit*, 462 Mich 439, 466; 613 NW2d 307 (2000) (observing that before reversing a precedent, "the Court must ask [*inter alia*] whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce . . . practical real-world dislocations"). In particular, with regard to this Court's development of the common law, at least some compelling argument must be offered in support of altering the law, and I have heard no such argument raised here by either party.

Thus, I would reverse the Court of Appeals on this issue and hold that all the alleged loans other than the last one fall outside the period of limitations. That is, because plaintiff waited more than six years to demand payment on all the loans but one, all her claims but one are barred by the statute of limitations.


Stephen J. Markman

S T A T E  O F  M I C H I G A N

SUPREME COURT

JOAN B. JACKSON,

     Plaintiff-Appellee,

v                                  No. 136423

ESTATE OF RONALD GREEN,

     Defendant-Appellant.

_____

CAVANAGH, J.

I disagree with the separate opinions of Justices Corrigan, Young, and Markman. On the partition issue, I would allow the merits of defendant's partition action to be heard because it comes within the purview of the survival statute. See MCL 600.2921. Regarding the statute of limitations issue, I find *Smith v Smith Estate*, 91 Mich 7; 51 NW 694 (1892), to be controlling, and I would apply its rule here to hold that all the claims were timely made except those that related to the first two loans. Accordingly, I would reverse the judgment of the Court of Appeals on both issues.

## I. PARTITION

In Michigan, there are two forms of joint tenancies. *Albro v Allen*, 434 Mich 271, 274; 454 NW2d 85 (1990). The first is the standard form in which, upon the death of a joint tenant, the entire estate transfers to the surviving joint tenant or tenants. *Id.* at 274-275. In the standard joint tenancy, one joint tenant

can unilaterally destroy the right of survivorship by severing the joint tenancy. *Id.* One way to sever the joint tenancy is a partition action. *Smith v Smith*, 290 Mich 143, 155; 287 NW 411 (1939), quoting *Midgley v Walker*, 101 Mich 583, 584; 60 NW 296 (1894).

The second form of joint tenancy is one that has "express words of survivorship in the granting instrument in addition to those creating a joint tenancy, such as . . . 'with full rights of survivorship.'" *Albro*, 434 Mich at 275 (citation omitted). In contrast to the standard joint tenancy, it is well settled in Michigan that the survivorship quality of this type of joint tenancy cannot be unilaterally severed by the act of one cotenant. *Id.* at 275-276. Thus, the survivorship right of this type of joint tenancy is indestructible and is not affected by a partition action.

The deeds in this case created both forms of joint tenancies. The September 1991 deed created the second, indestructible variety; thus, the defendant's partition action had no effect on the joint tenancy's survivorship quality, and the land automatically transferred to plaintiff upon defendant's death. The May 1991 deed, however, created a standard joint tenancy, which therefore could be affected by a partition action. Thus, the issue in this case is what effect defendant's death had on his pending partition action regarding the property covered by the May 1991 deed.

This Court's pronouncements regarding the absolute right of a cotenant to partition, coupled with the plain language of Michigan's survival statute, MCL

2

600.2921, demand that defendant's death not abate his partition action. Partition actions are governed by two sections of the Revised Judicature Act: MCL 600.3304 and MCL 600.3308. MCL 600.3304 states that "[a]ll persons holding lands as joint tenants . . . may have those lands partitioned." In addition, MCL 600.3308 states that "[a]ny person who has an estate in possession in the lands of which partition is sought may maintain a claim for partition of those lands . . . ." This Court has made strong statements about facially valid partition actions and the right of a joint tenant to compel partition in a standard joint tenancy: "The right of a cotenant to partition is *absolute*, not a mere matter of grace, within the discretion of the court, regardless of the motives of the parties entitled to partition." *Henkel v Henkel*, 282 Mich 473, 482; 276 NW 522 (1937) (quotation marks and citations omitted; emphasis added). Moreover, partition is mandatory "unless there is some paramount or controlling equity which warrants the court in refusing to act . . . ." *Id.*

When interpreting a statute, the primary goal is to give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). When the language of the "statute is clear and unambiguous, judicial construction is precluded." *Id.* (quotation marks and citation omitted).

Michigan's survival statute provides:

> *All actions and claims survive death.* Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to the next section. If an

3

action is pending at the time of death the claims may be amended to bring it under the next section. A failure to so amend will amount to a waiver of the claim for additional damages resulting from death. [MCL 600.2921 (emphasis added).]

The plain language of the statute is clear and unambiguous and therefore in need of no interpretation—*all* actions survive a claimant's death.

Not only is this interpretation consistent with the plain language of the statute, it is also consistent with the legislative history of the statute. This Court examined the lengthy history of the survival statute in *Hardy v Maxheimer*, 429 Mich 422; 416 NW2d 299 (1987). "'Early in its history, Michigan adopted a rather liberal "survival act" to preserve causes of action which, under common law, were terminated by the death either of the person injured or the tortfeasor.'" *Id.* at 436, quoting *Hawkins v Regional Med Laboratories, PC*, 415 Mich 420, 428-429; 329 NW2d 729 (1982). The statute was later amended to "expand[] the number of causes of action which survived a claimant's death," but "in [the Revised Judicature Act], the Legislature abandoned its restrictive 'laundry list' approach to the survival act" and amended it to its present form. *Hardy*, 429 Mich at 437. This Court then emphasized that the bill analysis accompanying the act clearly showed the Legislature's intent. *Id.* The relevant portions quoted were as follows:

> "*This section drastically changes the present law . . . .* At common law, personal rights of action died with the person. This seemed manifestly unfair in certain cases, so Survival Acts were written to allow certain actions to survive. *There is no good reason for allowing some actions to survive, and not others, apart from cultural inertia. . . .*

4

> "This section is a logical advance in the legislation in this area. That it has not been made earlier may be due to the unfortunate approach of the statutes in listing those actions which do survive, and thus overlooking those which the statute failed to cover. This section has the added advantage of simplicity in application." [*Id.* at 437-438.]

While the survival statute is commonly applied to tort actions, the history of and comments on the statute clearly illustrate the Legislature's intent to make *all* claims immune from attacks based on a claimant's death. The statute clearly abrogates the harsh common-law rule that pending actions die with the death of a party.[1] In fact, after reviewing the history of and comments on the statute in *Hardy*, this Court described the language of the statute as "sweeping and unambiguous" and declared that the statute is "universally applicable to *all* actions and claims which arise under the Revised Judicature Act." *Id.* at 438. A partition action is one of the actions included in the Revised Judicature Act. Given the survival statute's unqualified language and this Court's prior examination of the statute, I would hold that because defendant was alive when he filed his action for partition, the action survives and should be heard on its merits. To hold otherwise would frustrate the clear intent of the Legislature and would be inconsistent with

---

[1] In Michigan, the common law governs unless it has been abrogated by statute. *Albro*, 434 Mich at 286 n 6, citing *Myers v Genesee Co Auditor*, 375 Mich 1; 133 NW2d 190 (1965), and *Bugbee v Fowle*, 277 Mich 485, 492; 269 NW 570 (1936).

this Court's prior declarations regarding the applicability of the survival statute to actions arising under the Revised Judicature Act.[2]

Moreover, partition actions are equitable in nature. MCL 600.3301. Thus, this Court has broader authority to inject fairness and render a fair judgment. *Brown v Fletcher's Estate*, 146 Mich 401, 417-420; 109 NW 686 (1906) (acknowledging a softening of the common-law rule of abatement for a deceased party's claim when the claim is based in equity). In this case, notions of equity strongly support allowing the merits of defendant's partition action to be heard. After defendant filed an action for partition, his case sat idle for more than a year while plaintiff appealed the trial court's earlier ruling regarding the validity of the deeds. Eventually, the Court of Appeals summarily and correctly affirmed the validity of the deeds. Nonetheless, the Court of Appeals, without citing any supporting authority, held that because defendant had died before an order of partition was entered, his claim was moot. Given the validity of the May 1991 deed and defendant's absolute right to partition, I would allow defendant's action to continue. But for plaintiff's lengthy, unmeritorious, and collateral appeal and defendant's untimely death, the merits of defendant's claim would certainly have

---

[2] Justice Corrigan's opinion cites a section from the American Law Reports Annotated 2d to support its position that a judgment granting partition must be entered before a joint tenant's death in order to sever the joint tenancy. *Ante* at 5. The quotation used by her opinion, however, cites California law and therefore ignores the effect that *Michigan's* survival statute has on actions that arise under the Revised Judicature Act, such as the partition action here.

been heard. To hold otherwise would not only ignore notions of equity and this Court's pronouncements that the right to partition is absolute, but would also frustrate our Legislature's intent to make claims that arise under the Revised Judicature Act immune from attacks based on a claimant's subsequent death. See *Hardy*, 429 Mich at 436-438.[3]

## II. STATUTE OF LIMITATIONS

"[T]he period of limitations runs from the time the claim accrues," which occurs "at the time the wrong upon which the claim is based was done . . . ." MCL 600.5827.[4] In contract claims, the time of the wrong is the moment that the contract is breached. *AFSCME v Highland Park Bd of Ed*, 457 Mich 74, 90; 577 NW2d 79 (1998) (opinion by Cavanagh, J.). This case involves oral loans with no terms expressing a time for repayment. Repayment of this type of loan is due upon a demand. *Colburn v First Baptist Church & Society of Monroe*, 60 Mich 198, 200; 26 NW 878 (1886). Hence, a claim for nonpayment of such a loan

---

[3] Justice Corrigan's opinion ignores both the language of and this Court's pronouncements regarding Michigan's survival statute. It merely points to a "universal rule" that was pronounced by a Missouri court to explain why defendant's interest in the land did not survive his death. *Ante* at 5. I query why her opinion cites a Missouri case for its "universal rule," yet fails to cite a single case from this Court. Certainly, the Missouri court was not considering the effect of Michigan's survival statute when analyzing the partition claim before it. It belies logic and the intent of our Legislature to interpret the survival statute as allowing a deceased claimant's claim to survive under Michigan's survival statute, yet terminate the action on the basis of the claimant's death.

[4] The period of limitations for a contract claim is six years from the accrual date. MCL 600.5807(8).

7

accrues when a demand for repayment is made. However, this Court has held that accrual cannot be left to the whim of the lender because, if it were, the lender could wait in near perpetuity until demanding payment, which would contravene the venerable aims of statutes of limitations. Indeed, in *Smith Estate*, 91 Mich at 11, this Court held that if a demand is necessary for accrual of the claim, it should be made within a reasonable time, and if the demand is not made within a reasonable time, then accrual occurs and the period of limitations begins to run at the end of the period that would have been a reasonable time in which to make the demand.

In *Smith Estate*, the plaintiff sued to enforce a claim for the value of logs that were loaned to the defendant after the defendant failed to either return the logs or pay the plaintiff their value. *Id*. at 8-11. The Court, after reviewing testimony regarding the terms of the oral contract, held that the transaction was a sale and the claim was barred by the statute of limitations because the plaintiff failed to bring suit within six years after a reasonable time to demand payment had passed. *Id*. at 11-12.[5] The Court held that if a plaintiff failed to make a demand for repayment within a reasonable time, we should presume that a demand was made at the

---

[5] The facts of the contractual relationship in *Smith Estate* are very similar to those in the instant contractual relationship. In both cases, the parties orally agreed that one party would loan personal property to the other party. In both cases, the party loaning the property kept a ledger or list of the separate loans made throughout a period of years. In both cases, neither party expressly contemplated when the loans would be due for repayment.

expiration of the reasonable time to begin the running of the period of limitations. The Court defined a reasonable time as equivalent to the six-year period of limitations for an ordinary money claim, thus giving a party six years to make a demand and six years to bring suit after having made the demand. *Id*. The Court adopted this rule from *Keithler v Foster*, 22 Ohio St 27 (1871). *Smith Estate*, 91 Mich at 12.[6] Moreover, the Court reasoned that its rule was driven by the purpose of the statute of limitations: "The object of the statute of limitations is a beneficial one; and it is a salutary protection against fraudulent and stale claims, which without it might purposely be postponed for enforcement until the lapse of time had destroyed the proofs of their falsity." *Id*. at 11.

In essence, *Smith Estate* gives a plaintiff 12 years to bring a contract action on an oral loan that specified no time for repayment. The plaintiff has a reasonable time in which to make a demand, which *Smith Estate* held is six years as a matter of law. If no demand is made within six years, then the court will "presume" that a demand was made for the purposes of the statute of limitations.[7]

---

[6] See *Keithler*, 22 Ohio St at 32 (stating that "where no demand is shown to have been made within the statutory period for bringing the action, . . . for the purpose of setting the statute in operation, a demand will be presumed at the expiration of that period, from which time the statute will begin to run").

[7] Intuitively, if an actual demand occurred before the presumed demand, accrual would occur at the time of the actual demand.

9

Then, under the statute of limitations, the plaintiff has six years from the date of this presumed demand to bring a claim.[8]

In this case, consistently with the rule of *Smith Estate*, I would hold that the July 1991 and September 1992 oral loans between plaintiff and defendant are barred by the statute of limitations. Because plaintiff failed to make a demand for repayment within a reasonable time, I would presume that a demand was made at the expiration of the reasonable time and thus measure the period of limitations from the date of the presumed demand. There were 11 oral loans, which were made between July 1991 and February 1999. Plaintiff made no demand for payment until she filed her complaint covering all these loans in November 2004. Thus, for any loan made more than 12 years earlier, i.e., before November 1992, plaintiff's claim would be untimely.[9] Plaintiff's claims included two such loans,

---

[8] *Smith Estate* held that

[t]his rule gives the party six years in which to make his demand, and six years in which to commence his suit after demand, in all cases where a demand is necessary before suit. See *Keithler v. Foster*, 22 Ohio St. 27 [1871]; *Massie v. Byrd*, 87 Ala. 672 (6 South. Rep. 145) [1889]; *Thrall v. Mead's Estate*, 40 Vt. 540 [1868]; *Codman v. Rogers*, 10 Pick. 119 [27 Mass 112 (1830)]; *Mitchell v. McLemore*, 9 Tex. 151 [1852]; *Eborn v. Zimpelman*, 47 [Tex] 503 [1877]; *Morrison's Adm'r v. Mullin*, 34 [Pa] 12 [1859]; *Ball v. [Keokuk & N W R] Co.*, 62 Iowa, 751 (16 N. W. Rep. 592) [1883]; *Lower v. Miller*, 66 [Iowa] 408 (23 N. W. Rep. 897) [1885]; Ang. Lim. § 96; Bus.Lim. § 159. [*Smith Estate*, 91 Mich at 11-12.]

[9] This is because the latest reasonable time for plaintiff to make a demand on an oral loan made in November 1992 would be six years later—November 1998. And each of the claims on the pre-November 1992 loans would be time-

10

which originated in July 1991 and September 1992. Thus, her claims on those loans were barred by the statute of limitations in July 2003 and September 2004. In contrast, the claims relating to the remaining nine loans, which were made between March 1994 and February 1999, were timely under the November 2004 complaint.[10]

---

barred because plaintiff filed her complaint covering all the loans in November 2004.

[10] Justice Young contends that *Smith Estate* is distinguishable and, as a result, I am incorrectly extending that case by applying it here. *Smith Estate* dealt with the claim that the trial court wrongly precluded a certain witness's testimony. *Smith Estate*, 91 Mich at 8-9. That testimony would have been used to support the plaintiff's claim that the contract was a loan, rather than a sale. *Id*. at 9. It is true that *Smith Estate* concluded that the contract at issue was one for a sale, rather than a loan. But the Court went on to clearly explain that, if the testimony had been wrongly rejected, and if the contract was a loan, the error would have been harmless because the plaintiff's claim would have been untimely under the presumed-demand rule. *Id*. at 11-13. In fact, the unanimous *Smith Estate* Court expressly adopted the rule from the Ohio decision *Keithler v Foster* for the exact issue that is presented in the instant case. *Id*. at 12. The *Keithler* court clearly noted that

> the statute [of limitations] begins to run, in cases like this, from the time of demand, [and] it would be but reasonable to hold, in the absence of other special circumstances, where no demand is shown to have been made within the statutory period for bringing the action, that, for the purpose of setting the statute in operation, a demand will be presumed at the expiration of that period, from which time the statute will begin to run. [*Keithler*, 22 Ohio St at 31-32.]

Thus, *Smith Estate* held that if the testimony had been admitted, and the contract had been seen as an oral loan with no specified time for repayment, this rule would apply. Thus, I find *Smith Estate* to be directly on point and persuasive. Further, to the extent that this portion of *Smith Estate* was dictum, I would adopt it as the controlling rule on this issue, which is exactly what our colleagues in *Smith Estate* unanimously said that they would do.

11

As noted, I agree with Justice Young's statement that "the absence of a specific time for repayment does not allow a creditor to withhold this demand for an indefinite period of time." *Ante* at 3. However, I do not agree with the construct that Justice Young develops to address this concern. He institutes a rule that allows the jury to decide when a presumed demand should occur, which is set at what the jury determines to be a reasonable time. Justice Young bases this construct on the idea "that the parties intended plaintiff's demand for repayment to occur within a reasonable amount of time." *Ante* at 3. I decline to accept this construct for several reasons.

First, there is little precedential support for this construct. Justice Young relies on *Pierson v Davidson*, 252 Mich 319; 233 NW 329 (1930), to support his construct. But *Pierson* is both factually and legally distinguishable from the present case. Factually, *Pierson* involved a written oil and gas lease agreement. *Id.* at 320-321. Thus, unlike the present case, *Pierson* did not deal with an oral loan. And legally, *Pierson* dealt with the contractual requirement that the lessor clear a cloud on the title to the real property or the lease would "'be voided and extinguished, and shall become null and void . . . .'" *Id.* at 321. *Pierson* did not deal with the question of when payment on an oral promise to repay, which hinges on a demand, was due. In contrast, *Smith Estate* dealt with this Court's unanimous statement that, in the case of an oral loan with no time set for repayment, a demand is to be presumed six years from the loan's inception and accrual occurs at that time. In light of Justice Young's refusal to rely on *Smith Estate* (a case that is

12

factually and legally exactly on point), I question his reliance on *Pierson* because that case seems much less applicable here than *Smith Estate*. It is unclear why Justice Young finds *Smith Estate* too dissimilar for application here, while concomitantly finding the much more distinguishable *Pierson* case to be controlling.

Second, I believe that Justice Young's construct overly diminishes the statute of limitations. Justice Young puts no restriction on how long a reasonable amount of time may extend. Instead, he would allow a reasonable amount of time to go on indefinitely. I think that this eviscerates the statute of limitations and undermines its purposes in this context, as *Smith Estate* clearly discussed. See *Smith Estate*, 91 Mich at 11-12. In contrast to Justice Young's construct, the *Smith Estate* construct presents a better balance between the rationales supporting the statute of limitations and the legal precepts pertaining to oral contracts. The *Smith Estate* construct gives definite answers. Under no circumstances may a plaintiff carry out his claim more than 12 years past the time of the oral loan that has no time set for repayment. As noted, this Court lauded the stability and predictability of this construct in *Smith Estate* because it reduces fraud and the litigation of stale issues. See *Smith Estate*, 91 Mich at 11. Justice Young's construct does not protect against these problems. The *Smith Estate* construct also honors the concepts that an oral loan is not due until a demand is made and a claim does not accrue until a demand (presumed or actual) occurs. In contrast, under Justice Young's construct, a plaintiff need only convince a jury that it was

13

reasonable to delay the demand for payment for any number of years in order to bring claims on loans that originated, conceivably, decades in the past.

Both Justice Young's construct and the *Smith Estate* construct presume a demand at some point after the oral loan was made. I find the *Smith Estate* construct's method of determining when that presumption occurs to be more closely tied to the purposes of the limitations period, while honoring basic contract tenets. Further, *Smith Estate* provides the most applicable standard for the facts and issues in the present case; therefore, I would apply it in place of Justice Young's construct. Under the *Smith Estate* construct, I would hold that only the claims on the first two loans (those arising before 1992) were time-barred.

I note that Justice Markman questions my reliance on *Smith Estate*. He argues that the contract in *Smith Estate* contemplated a delay in repayment, whereas the "express terms of the instant contracts" did not contemplate any such delay. *Ante* at 3 n 3. I respectfully disagree. I question whether Justice Markman can opine on the "express terms" of the instant contract with any specificity, given that the parties litigated the very existence of any oral contract. Indeed, the trial court discussed this case's facts as follows when reviewing a motion for summary disposition:

> The loans—or the distribution of money . . . is a close question, but there is some testimony that [Green] made a request to borrow, which I think impliedly includes a promise to repay, and while [Jackson] said [in her deposition] there was no specific agreement or promise to repay . . . , which certainly hurts her case, she did say that there was a request to borrow and, therefore, that's what caused the advance of monies.

> So I think that there is a factual question as to whether these advances were gifts, whether they were, in fact, loans, as [Jackson] now claims, or whether they were, in fact, compensation as [Green] claims at least part of the advances were for.

Thus, while the jury eventually decided that there were enforceable oral contracts, I do not believe that the facts of this case support Justice Markman's assertion that the contracts' express terms did not contemplate a delay in repayment.[11] The record only supports the fact that defendant asked to borrow money from plaintiff and that plaintiff responded by writing numerous checks. Moreover, the parties' actions actually indicated that they did contemplate a delay in repayment because plaintiff continually made numerous loans to defendant over a term of years. It strains reason to conclude, as Justice Markman does, that the parties expected

---

[11] In fact, the jury's own words belie Justice Markman's contention that the parties did not contemplate delay in repayment. The jury stated that the oral loans were due at the time plaintiff's claim was filed, which was years after the loans were consummated. The jury answered a special interrogatory form regarding each loan as follows: "[Plaintiff] established . . . that there was an enforceable contract between [plaintiff] and [defendant], that this check was a loan expected to be repaid and [that] repayment is now owed to [plaintiff]." The jury did not conclude that payment was owed upon delivery. Justice Markman disagrees because he thinks that "the mere fact that the jury concluded that 'repayment is now owed' does not necessarily mean that the jury either concluded that repayment was not owed as soon as the money was borrowed or that the parties did 'contemplate delay in repayment.'" *Ante* at 4 n 3. I disagree. The jury was tasked to decide whether the claims were timely. The jury decided that all of plaintiff's claims were timely and that payment was "now" due. "Now" could only mean at the time the jury made its decision because, if "now" also applied to when the loans were created, many of the claims would have been untimely because they came into existence more than six years before the claims were filed. Thus, the jury's conclusions do not support Justice Markman's supposition that the parties did not contemplate delay in payment.

15

payment immediately yet, despite never receiving any such immediate payment, plaintiff continued to make additional loans over several years.[12]

Justice Markman also argues that *Smith Estate* limited its holding to cases in which a demand is necessary. Assuming that he is correct, I do not see how this precludes the application of *Smith Estate* in this case. As Justice Markman notes, if "no time is set for the repayment of borrowed money, the loan is impliedly payable on demand." *Ante* at 2, citing *Colburn*. It is uncontested that this case involves loans that set no time for repayment of the borrowed money. Hence, I think *Smith Estate* applies.

---

[12] I do not point to these possible interpretations of the instant agreements' terms to definitively say what the parties intended regarding delay in payment. Justice Markman mistakes my point if that is what he sees as motivating my reference to them. Instead, I simply note that these facts undercut Justice Markman's assertion that "the express terms of the instant contracts no more contemplated delay than did the express terms of the contract in *Palmer* [*v Palmer*, 36 Mich 487 (1877)]." *Ante* at 4 n 3. This is important because Justice Markman's position depends on equating *Palmer*'s demand note with the instant oral contracts. Thus, I merely note that Justice Markman's link of the two disparate types of agreements is not supported by their facts. Justice Markman also asks whether I would leave the statute of limitations issue to the jury. *Ante* at 4 n 3. He seems to think that my references to this case's facts and the jury's conclusion undercut my adoption of the *Smith Estate* construct. I think that this opinion plainly notes that I conclude that, under *Smith Estate*, the statute of limitations issue for an oral loan having no specified time for repayment is a question of law for the court. That conclusion is not undermined by my pointing out that Justice Markman's position of applying *Palmer* by analogy, which relies on the facts, is not supported by the facts of this case. Moreover, the "express terms" debate that Justice Markman and I are engaged in shows how foolhardy undertaking such an endeavor is for this type of oral loan. Yet that endeavor is required for Justice Markman to link *Palmer* to this case, whereas my approach requires no such legal groping.

16

Justice Markman also suggests that applying *Smith Estate* here "anomalously provide[s] those parties who *never* make a timely demand with a longer period in which to bring an action than those parties who *do* make a timely demand." *Ante* at 4 n 3. I disagree that following *Smith Estate*'s general rule that a demand is necessary to trigger accrual causes anomalous results. Under *Smith Estate*, the period in which to bring a claim is always six years—*after* accrual of the claim. Justice Markman and I simply disagree on when accrual should occur. His insistence (contrary to the general rule) that accrual must occur at the loan's inception is what causes his perception of anomalous results. Under *Smith Estate*, every claimant has six years to bring his claim after it accrues, which is triggered by a demand or the presumed demand, whichever happens first. While I accept that Justice Markman disagrees with this legal construct, I disagree with his assertion that it causes anomalous results, especially in light of his counterintuitive position that parties make oral loans to each other and expect payment immediately. [13]

---

[13] Justice Markman accepts that oral loans are impliedly due on demand and that accrual occurs on that demand. Noting his acceptance of this, I am perplexed about why Justice Markman finds it anomalous that some oral loans accrue later than other oral loans. His example shows that he thinks it is inappropriate that a lender who makes an immediate demand has less time to bring a claim than a lender who never makes a demand. Despite Justice Markman's aversion to it, this dynamic does not contravene the theory that an oral loan is due on demand and accrual occurs at demand. It seems that Justice Markman's perception of an anomalous result is caused by something he already accepts: if "no time is set for the repayment of borrowed money, the loan is impliedly payable on demand." *Ante* at 2, citing *Colburn*. Indeed, *Colburn*'s holding

Finally, Justice Markman adopts his immediate-accrual construct by incorporating the holding from *Palmer v Palmer*, 36 Mich 487 (1877). While conceding that *Palmer* and its progeny "addressed written demand notes," Justice Markman concludes that "there is no apparent reason why *Palmer* should not equally apply equally to an oral contract." *Ante* at 6. I respectfully note several reasons why *Palmer* should not apply to oral contracts like those in this case.

*Palmer*, a case concerning a promissory note, held that "a *note* payable on demand is payable at once and without demand, so that the statute [of limitations] runs from its delivery." *Palmer*, 36 Mich at 491 (emphasis added). This Court has defined a promissory note as "a *written unconditional promise* by one person to pay to another person therein named . . . a fixed sum of money . . . ." *Parker v*

---

necessarily puts the lender in a position to set when payment is due. Thus, Justice Markman is correct to note that this rule can conceivably lead to an oral loan being due in any length of time, as set by the lender. If this is what concerns Justice Markman, it is *Colburn* that causes his consternation, not my application of *Smith Estate*. Nonetheless, I can sympathize with him because I too sense a conflict between the statute of limitations and a lender being free to harbor his claim indefinitely by not making a demand. Yet I do not think that the solution to this concern is to force the oral-loan square peg into the demand-note round hole. But that is what Justice Markman does by insisting, against reason, that an oral loan is legally the same as a "demand note," which by its mere name indicates a demand upon delivery. See the discussion later in this opinion. Instead, I find the *Smith Estate* construct to be much more applicable here because it was actually espoused to deal with this very issue. It handles the concern that Justice Markman and I share because it precludes lenders from extending accrual of their claims indefinitely by only allowing such an extension for up to six years. Moreover, it avoids having the necessity of accepting the illogical premise that, when an oral request to borrow money is accepted, repayment is due at the instant the lender hands the money over to the borrower.

18

*Baldwin*, 216 Mich 472, 474; 185 NW 746 (1921) (emphasis added). Further, "[n]o contract or agreement is a promissory note which does not provide for the payment of money, *absolutely and unconditionally*." *Id.* (emphasis added). Thus, a promissory note is more than a contract to repay a loan: it is a *written instrument* that embodies a formal promise to repay. See MCL 440.9102(1)(uu) and (mmm); MCL 440.3104. The case at hand, however, involves informal oral contracts, which do not meet the strict formalities of a promissory note. Therefore, in determining when the period of limitations begins to run on an oral contract that does not specify the terms for repayment, this Court should apply caselaw dealing with general breach of contract actions, such as *Smith Estate*, rather than those cases that deal with the hypertechnical code of negotiable instruments.

In addition, the only justification that Justice Markman gives for applying *Palmer* is that doing so is supported by the policies that underlie the statute of limitations. While I agree with Justice Markman that those policies are strongly implicated when dealing with an oral agreement, *Smith Estate* properly addressed this issue without subjecting informal oral agreements to the more stringent rules regarding promissory notes. See *Smith Estate*, 91 Mich at 11-12.

Also, unlike the parties in *Palmer*, the parties here did not formulate a written unconditional promise to repay within 30 days after demand. See *Palmer*, 36 Mich at 490. In contrast, here there were merely oral requests to borrow money, which prompted plaintiff to write 11 checks over a span of several years. While plaintiff expected that she would be repaid, there were no specific

19

agreements about repayment or promises to repay the borrowed funds. Thus, as noted, in contrast to Justice Markman's assertion, there were no "express terms" of the contracts that contemplated immediate payment.

Finally, applying *Palmer*'s view that the period of limitations begins to run on the date of delivery, and therefore no demand is necessary, is inconsistent with this Court's declarations regarding basic contract principles. In essence, *Palmer* puts the oral-contract borrower in immediate breach of the contract and thus makes a loan that had no specified time set for repayment due immediately. This conflicts with our pronouncement that "when a contract is silent as to time of performance or payment, absent any expression of a contrary intent, the law will presume a reasonable time." *Duke v Miller*, 355 Mich 540, 543; 94 NW2d 819 (1959). Moreover, application of *Palmer* here contravenes common sense: informal oral loans are handshake agreements that intuitively are not breached at the time of the handshake. It would be nonsensical to assume that informal loans that consisted of thousands of dollars would be due immediately, as they would be under *Palmer*. My application of *Smith Estate* does not subject informal oral handshake-type agreements to the strict formalities of promissory notes, and it is consistent with this Court's pronouncements regarding basic contract principles.

In sum, Justice Markman's construct represents one end of the spectrum on this issue. He would have accrual occur at the inception of the loan, which I think would prematurely trigger the running of the period of limitations because it contradicts both the facts of this case and this Court's general pronouncements on

20

oral contracts. In essence, Justice Markman gives the interests supporting the statute of limitations too much weight. Justice Young, in contrast, represents the other end of the spectrum. Under his construct, the purposes of the statute of limitations are given too little respect because a claimant can extend the accrual of his claim indefinitely. I recognize that both constructs represent good-faith attempts to balance the tenets of statutes of limitations with the countervailing principles of contract law. However, I find them both to be out of balance. I think that applying *Smith Estate* to this issue achieves the best balance between the concern of ensuring that contracts will be enforced and the competing concern that claims will not become stale.

## III. CONCLUSION

For all these reasons, I would reverse the judgment of the Court of Appeal on both issues.

Michael F. Cavanagh
Marilyn Kelly

S T A T E   O F   M I C H I G A N

SUPREME COURT

JOAN B. JACKSON,

      Plaintiff-Appellee,

v                                          No. 136423

ESTATE OF RONALD GREEN,

      Defendant-Appellant.

_____

WEAVER, J.

    I believe that leave to appeal was improvidently granted in this case because the result reached by the Court of Appeals in this case is correct.


                                      Elizabeth A. Weaver
                                      Diane M. Hathaway